### FARRELLY v. SKELLY et al.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 513*)—CONCLUSIVENESS OF SURROGATE'S DECREE.

Code Civ. Proc. § 2742, provides that a judicial settlement of an account shall be conclusive upon the parties, and section 2743 makes a decree directing payment of a debt or a distributive share conclusive. Plaintiff having recovered a judgment against defendant executrix, after an accounting by defendant the surrogate ordered the judgment paid, which was not done. Plaintiff claims that a conveyance by defendant to an aunt was without consideration, and that defendant used the proceeds of a sale ostensibly made by the aunt in buying another tract; title being taken in a cousin's name. *Held*, that the surrogate's decree did not preclude a suit to impress a trust on the last-mentioned tract, not being res judicata that the first tract was actually sold to defendant's aunt, though the surrogate found that defendant distributed part of the proceeds of the first sale among the legatees and refused to find that the proceeds of the sale to the aunt belonged to the estate, and though plaintiff's petition in the Surrogate's Court alleged information and belief that the first tract was sold to defendant's aunt, and that defendant received the proceeds.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 513.*]

2. COURTS (§ 198*)—SURROGATES—JURISDICTION.

The Surrogate's Court was without jurisdiction to vacate the deed to defendant's aunt and instruments whereby legatees acknowledged receipt of part of proceeds.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 469; Dec. Dig. § 198.*]

3. TRUSTS (§ 361*)—SUIT TO ESTABLISH—REMEDY AT LAW.

Before suing to impress a trust upon land claimed by a judgment creditor of an estate to have been bought with estate assets, the creditor was bound to exhaust its remedy at law.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 556; Dec. Dig. § 361.*]

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Stephen Farrelly, receiver, against Mary Skelly and another. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Frederic J. Swift (William R. Conklin, on the brief), for appellant.
Charles O. Maas, for respondents.

McLAUGHLIN, J. The plaintiff, as receiver of the City Trust, Safe Deposit & Surety Company of Philadelphia, which is a judgment creditor of the defendant Mary A. Skelly, as executrix of the estate of Patrick Larney, deceased, brought this action to impress a trust upon certain real property situate in the city of New York, known as No. 216 East Forty-Ninth street. The complaint alleges the recovery of a judgment by the surety company which is wholly unpaid, and that the property in question was purchased by the defendant Skelly as executrix of the estate of Patrick Larney, deceased, with funds of the estate; title to such real estate being fraudulently taken in the name of the defendant Finnegan. The judgment demanded is that a trust be impressed upon such property in favor of the plaintiff, and that the same be sold and the proceeds derived therefrom be applied, so far as necessary, to the satisfaction of the judgment. The answers put in issue the material allegations of the complaint. At the trial the complaint was dismissed upon the merits, and the plaintiff appeals.

From the facts developed at the trial it appears that on the 27th of January, 1897, Patrick Larney gave to the surety company his bond, by which he agreed to save it harmless from any loss which it might sustain by reason of having issued its bond for $8,279 to the comptroller of the city of New York, on behalf of one Patrick Costello, to discharge a mechanic's lien in favor of the Glen Cove Granite Company. Patrick Larney died in May, 1897, leaving a will by which he gave all his property to his widow for life, remainder in equal shares to his seven children, naming two of them, John P. Larney and the defendant Mary A. Skelly, as executor and executrix. The will was admitted to probate, and letters testamentary issued to the executor and executrix named therein. The widow died in July, 1898, and John P. Larney died intestate some time thereafter, and the defendant Skelly was appointed his administratrix. The estate of Patrick Larney consisted solely of certain real property in the city of New York, known as Nos. 325–327 East Thirty-Eighth street, and on the 6th of June, 1901, by a deed of conveyance recorded the following August, the defendant Skelly, as sole surviving executrix, under a power of sale contained in the will, transferred this property to her aunt, the defendant Devlin.

In the meantime the Glen Cove Granite Company had brought an action in the Supreme Court of the state of New York to foreclose its lien, which resulted in a judgment against Patrick Costello; the complaint being dismissed as to the surety company. In February, 1901, however, the granite company commenced an action against the surety company on its bond in the United States Circuit Court for the

Eastern District of Pennsylvania. When this action was commenced, the surety company notified the defendant Skelly of that fact, and she at once consulted an attorney, one Anderson, who notified the attorney for the surety company that he had been retained by her in the subject-matter of the litigation. This action resulted on the 15th of May, 1901, in a judgment against the surety company for $6,532.63, and it immediately notified Anderson of the recovery of· the same. During the course of the trial it was in effect admitted that the letter books of the firm of attorneys of which Anderson was a member would show that a letter was written to the defendant Skelly on May 20, 1901, and that the registers of the firm, containing a record of the proceedings in the granite company action, would show that the defendant Skelly called at their office the following day. The contents of the letter and the entries in the register do not otherwise appear, but the inference to be drawn from the admission is irresistible to the effect that the defendant Skelly knew of the recovery of the judgment against the surety company when she transferred the property referred to to Mrs. Devlin on the 6th of June, 1901. It further appears that on the 27th of June of the same year, she, by the same firm of attorneys, presented a petition to the court to be allowed to intervene in the action brought by the granite company· in this state, asking that the judgment against Costello be vacated and she be given leave to defend or appeal.

An appeal was taken from the judgment obtained in the Circuit Court of the United States, which was ultimately, in 1903, affirmed by the Circuit Court of Appeals. The surety company then paid the judgment and served a formal proof of claim upon the defendant Skelly, as executrix, for the amount paid, which she rejected, and it thereafter commenced an action against her in the Supreme Court of this state. The result of this action was a judgment in its favor for $9,202.39, with costs against her personally. The surety company then filed a petition in the Surrogate's Court asking that she, as executrix, be compelled to account and pay its claim, and in the petition alleged, on information and belief, that she had received, as executrix, the proceeds of the sale of the Thirty-Eighth street property to the defendant Devlin. She accordingly filed an account, charging herself with $18,000, received from the sale, and crediting herself with payments to Mrs. Devlin of $6,000 ($1,000 for funeral expenses, and $5,000 on a promissory note of the testator), and of $2,000 to each of the six·surviving children of the testator, who were legatees under his will, and that such payments exhausted all of the assets which she had received. The surety company objected to the account on the ground that no vouchers were presented for any of the payments, and that they were illegal and improper, inasmuch as they were made after notice of its claim.

The issue raised by the objections to the account was sent to a referee to take proof and report, and he found that on June 7, 1901, the executrix had distributed $12,000 as claimed by her, which payments were unlawful, and that her account should be surcharged with this sum. He also disallowed the payment of $1,000 for funeral expenses, and surcharged her account with that amount. He charged the ex-

ecutrix with $18,000 as proceeds derived from the sale of the Thirty-Eighth street property, together with interest on $13,000, from the 6th of June, 1901, and credited her with the payment of $5,000 on the note above mentioned, which left in her hands something like $15,000, out of which should be paid to the surety company $9,202.39, with interest from December 14, 1903. His report in February, 1905, was confirmed by a decree of the Surrogate's Court, which settled the account as found, and directed the defendant Skelly to pay to the surety company $9,561.28, the amount of its claim with interest, and, in addition, $412.30, costs, and to distribute the balance among the six children of the testator, the legatees under his will, in equal payments of $911 each, which sums they were found to have received in full. Mrs. Skelly failed and neglected to comply with the decree by making the payment therein directed, and she was subsequently imprisoned for several months for failing to do so. Execution was also issued out of the Surrogate's Court on the decree, which was returned wholly unsatisfied.

This action was then commenced; the complaint alleging that the transfer of the Thirty-Eighth street property to Mrs. Devlin was without consideration, and for the purpose of hindering, delaying, and defrauding creditors, that the property was not actually sold until July, 1902, when it was conveyed to Elizabeth M. Anderson, and that the proceeds derived from this sale, some $17,500, were received by Mrs. Skelly and used by her in purchasing the Forty-Ninth street property, and title being taken in the name of the defendant Finnegan, her cousin. It is upon this property that the trust is sought to be impressed.

It appeared: That Mrs. Skelly had a bank account which was kept in the name of Skelly & Larney, but which was in fact her personal account, that when Mrs. Anderson purchased the Thirty-Eighth street property in 1902—ostensibly from Mrs. Devlin, the holder of the record title—her agent paid a deposit of $1,000, less his commission of $177.50, in cash, and the day following Mrs. Skelly deposited in her bank account the sum of $822.50 in cash. The agent was unable to state whether he paid the money to Mrs. Devlin or to Mrs. Skelly. When the title was closed and the deed of conveyance delivered, the balance of the purchase price was paid by two checks aggregating $16,755.87, and these checks were deposited the next day by Mrs. Skelly in the same account. The following September Mrs. Skelly signed the contract for the purchase of the Forty-Ninth street house as purchaser. Subsequently an adjournment for closing the title was had at her request, and it is conceded that the purchase price of this property was paid by her checks drawn upon this same account, being wholly, or in part at least, the identical money received from the sale of the Thirty-Eighth street premises, and that the defendant Finnegan, in whose name the title was taken, advanced no part of the consideration. After the conveyance of the Thirty-Eighth street house to Mrs. Devlin, in 1901, Mrs. Skelly and other members of her family continued to reside therein until the purchase of the Forty-Ninth street house, to which place they then moved, and where they still reside. Mrs. Devlin and Miss Finnegan, her niece who lived with her, also moved into

the Forty-Ninth street house when it was purchased, but they have since removed therefrom.

The foregoing facts were uncontradicted, and the trial court, upon the oral testimony of interested parties—not only uncorroborated, but contradicted as to the material portions—held that fraud had not been established, and the conveyance to Mrs. Devlin was a real and bona fide transaction. Such finding, if permitted to stand, upon the facts set out in the record, would be a travesty on justice.

But it is claimed by the respondents that the decree of the Surrogate's Court prevents a recovery, inasmuch as it is res adjudicata that the Thirty-Eighth street property was in fact sold to Mrs. Devlin, and that she paid $12,000 in cash therefor which is a bar to the maintenance of this action. It is not res adjudicata, and I am unable to see any validity in the claim thus made. The Code of Civil Procedure provides that a judicial settlement of the account of an executor or administrator is conclusive upon the parties: (1) That the items allowed for moneys paid out are correct; (2) that the party has been charged with all interest for moneys received for which he is accountable; (3) that the money charged as collected is all that was collectible on the debt stated; and (4) that the increase and decrease in the value of the property have been correctly stated. A decree of the Surrogate's Court settling the accounts of an executor or administrator is conclusive as to these facts. Section 2742. A decree directing the payment of a debt or a distributive share is also conclusive. Section 2743. But none of these items is attacked or questioned in any way by the present action. The plaintiff does not seek to charge the executrix with having received any greater amount from the sale of the Thirty-Eighth street property than that with which the decree charged her, and which she admitted she had received. Neither is any question made as to the amount decreed to be paid.

For this reason the authority called to our attention (Mutual Life Ins. Co. v. Schwaner, 36 Hun, 373, affirmed on opinion below, 101 N. Y. 681) has no application. There an executor caused real property belonging to the estate which he represented to be appraised and its sale directed by an order of the Surrogate's Court at not less than its appraised value. Under a power of sale contained in the will, the executor sold the property to a third person, the real purchaser being the executor himself and his partner, for the sum fixed by the order. He charged himself in the account subsequently filed in the Surrogate's Court with the amount thus received, and his accounts were finally and judicially settled. The property was subsequently sold under foreclosure and a surplus realized, which the persons interested in the estate claimed belonged to them, to the exclusion of the executor and his partner. It was held that these persons were represented in the Surrogate's Court at the time the decree was entered, that they were bound by it, and could not claim any further share.

This case was followed in Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470, where property was sold by the executors to the wife of one of them. In their accounts the executors charged themselves with the purchase price, which the surrogate found to be the full fair

value of the property. Their accounts were settled by a decree duly entered, and the shares paid to the distributees as directed by the decree. It was held, Mr. Justice Cullen writing the opinion, that, assuming the sale to have been avoidable in the first instance, the wife of the executor could convey good title, since the parties interested in the estate were precluded by the decree and the acceptance of their shares thereunder from thereafter questioning the validity of the sale.

But in the case before us the appellant does not question the title to the property, nor does he claim that the executrix has not been charged with its full value, or that he is entitled to receive any larger amount than is fixed by the decree. He admits that the property has been sold, and asserts only that the executrix received the proceeds, not upon the sale to Mrs. Devlin, which he asserts was without consideration, but on the sale in form only by the latter to Mrs. Anderson. It is true that the sale to Mrs. Devlin is thus indirectly attacked, but the referee found as a fact only that on June 6, 1901, the executrix "transferred the title to the property 325–327 East Thirty-Eighth street, New York City, to Catherine Devlin, her aunt," and the surrogate held that the executrix was chargeable with $18,000, proceeds of this sale. Neither of these findings is inconsistent with the claim made by the plaintiff. It is true the referee did find that the executrix distributed $12,000 of the proceeds of the sale among the legatees, and refused to find that the money received when the property was sold to Mrs. Anderson belonged to the Larney estate; but these findings are not a bar to the maintenance of the action. There were before the referee the deed to Mrs. Devlin, the verified account of the executrix wherein she charged herself with having received $18,000 as proceeds of the sale, and instruments under seal and duly acknowledged, by which each of the six legatees admitted the receipt of $2,000. The only way in which the plaintiff could attack these instruments was in the manner here sought, by an action in equity. The deed and receipts could not be set aside, inasmuch as the Surrogate's Court had no power to adjudicate upon that subject. Matter of Thompson, 184 N. Y. 36, 76 N. E. 870; Matter of Randall, 152 N. Y. 508, 46 N. E. 945; Matter of Bunting, 98 App. Div. 122, 90 N. Y. Supp. 786.

In Matter of Randall, supra, certain distributees assigned their shares in an estate to the administrator, and upon his accounting claimed that the assignments had been induced by fraud and were void. The surrogate, in directing the distribution of the estate, disregarded the assignments, and this was held error. After an exhaustive discussion of the authorities, Judge Vann, who wrote the opinion, said:

"When therefore, upon an accounting in the Surrogate's Court, the same distributive share is claimed by two persons, one by original title, and the other by an assignment apparently valid, resort must be had to a court of equity to settle the dispute, for the surrogate is without power to determine the question."

In Fulton v. Whitney, 66 N. Y. 548, a testator bequeathed to his executors a fund in trust to pay debts not otherwise provided for and to pay certain legacies. He left certain real estate worth $10,000, which was sold under foreclosure and bid in by the executors and their part-

ner for $5,000. The sale left a deficiency of some $6,500, which was paid by the executors out of the trust fund as a debt not provided for, and the fund thereby became insufficient to pay the legacies, to all of which the plaintiff had become entitled. The Surrogate's Court, in a final decree, allowed this payment from the trust fund, and directed the balance to be turned over to the plaintiff, who had been a party to the proceedings and had contested that item. It was held that the plaintiff was not precluded by the decree from bringing an action to impress a trust upon the property purchased by the executors.

In Sweeney v. Warren, 127 N. Y. 426, 28 N. E. 413, 24 Am. St. Rep. 468, an executor under a power of sale conveyed certain real property to the testator's widow for $500. Upon his accounting, to which the plaintiffs were cited, the $500 and a further sum received from the sale of real estate were treated as personal property, and the whole paid to the widow; the testator having left no descendants, and the whole estate being less than $2,000. The plaintiffs, as heirs of the testator, thereafter brought an action of ejectment to recover the land sold to the widow, on the ground that the power of sale had been improperly exercised. It was held they were not estopped from maintaining the action by the decree in the Surrogate's Court.

From these authorities it necessarily follows that, if the allegations of the complaint be true, then the only way in which the plaintiff could enforce his rights is by an action in equity to impress a trust upon the property·into which the proceeds derived from the sale of the property owned by the testator at the time of his death have been put, and the decree in the Surrogate's Court in no way prevents the maintenance of such action. The decree does not estop him from maintaining the action. That is not a payment. It does not discharge the executrix or relieve the fund distributable. The decree gave to the plaintiff a remedy against the executrix personally for its proportion of the fund found to be in her hands, but this remedy did not in the least impair the remedy against the fund itself. Nothing short of payment or some act of the plaintiff to the prejudice of the executrix or other persons interested in the estate could free the fund from the former's claim. Before an action could be maintained in equity, it was necessary that the surety company should do precisely what it did; that is, exhaust its remedy at law. A judgment was obtained against the executrix, and before execution could be issued thereon it was necessary that an accounting be had in the Surrogate's Court. It is true, in the petition asking for an accounting, the company alleged on information and belief that the Thirty-Eighth street property was sold to Mrs. Devlin, and that the executrix received the proceeds of the sale; but, upon the reference, it requested a finding that the transfer was without consideration, and it can fairly be inferred that at the time the petition was filed it had no knowledge of the fraud alleged. Whether it did or not, this allegation in the petition did not operate as an estoppel, or prevent the plaintiff from following the fund into the property into which it had been put. The admitted facts make out a strong prima facie case of fraud, which is controverted only by the oral testimony of the defendants, which in many respects is very unsatisfactory, and

especially so when considered in connection with the further fact that every piece of documentary evidence which might have supported them seems to have been destroyed by them.

I am of the opinion that justice demands a new trial.

The judgment appealed from, therefore, is reversed, and a new trial ordered, with costs to appellant to abide event.

CLARKE, HOUGHTON, and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). This is a creditor's action by the plaintiff, as the receiver in bankruptcy of a creditor of one Patrick Larney, deceased. No judgment upon the claim was ever obtained against either Larney or the defendant as his personal representative. The complaint alleges that on the 25th of May, 1897, Patrick Larney died leaving a last will and testament, by which he devised and bequeathed all his property, real and personal, to his wife during her life, and upon the decease of his wife to his children equally, share and share alike, with a power of sale to his executors and appointing the defendant Mary A. Skelly executrix and his son John P. Larney executor. At the time of his death it does not appear that the testator had any debts except the contingent liability upon the bond to the trust company of whom the plaintiff is receiver. Upon the death of the testator this real property passed to his wife for life, with a remainder over to the defendants in fee. Their title became absolute on the probate of the will, subject only to a proceeding under title 5 of chapter 18 of the Code of Civil Procedure to dispose of such real property for the payment of his debts. This will was duly admitted to probate, and letters testamentary were issued by the surrogate of the city of New York on June 27, 1897.

By section 2749 of the Code of Civil Procedure it is provided that real property of which a decedent dies seised may be disposed of for the payment of his debts and funeral expenses as prescribed in that title. Section 2750 provides that, at any time within three years after letters were first duly granted within this state upon the estate of the decedent, an executor or administrator or a person holding a judgment lien upon the decedent's real estate at the time of his death, or any other creditor of the decedent except the holder of a mortgage, which is a lien upon the decedent's real property, may present to the Surrogate's Court from which letters were issued a written petition duly verified praying for a decree directing the disposition of the decedent's real property. Section 1251 extends the time to commence the proceeding during which an action is pending in a court of record between a creditor and the administrator or executor of the estate if the creditor has, before the expiration of the time so limited, filed in the clerk's office in the county where the real property is situated a notice of the pendency of the action. After providing for the contents of the petition, the issuance of citation, and the proof necessary for a decree, section 2757 provides that, if it shall appear to the satisfaction of the surrogate that the personal estate of the decedent is insufficient for the payment of his debts and funeral expenses, the surrogate shall make a de-

cree empowering the executor or administrator to mortgage, lease, or sell the whole or such part of the real estate or interest of the decedent in real property as the surrogate shall deem necessary for the payment thereof.

By this title of the Code of Civil Procedure a proceeding is provided for the application of a decedent's real property when necessary to pay his debts, and this is the only provision with which I am acquainted under which a court has power to compel the application of a deceased debtor's real property to the payment of his debts. The will of the testator gave no power to his executors to sell his real property for the payment of his debts and contained no direction in relation to his indebtedness. It disposed absolutely of his real property, and upon his death the title to such real property vested absolutely in his devisees, subject only to the power of the Surrogate's Court to decree a sale thereof upon a proper proceeding being commenced by a creditor under these provisions of the Code of Civil Procedure within a time there limited, namely, three years from the issuance of letters testamentary. The power of sale contained in the will was evidently given for the purpose of distribution; but no trust was created, the executors had no title to the real property, no power to sell it to pay the testator's debts, and the proceeds of the sale after the execution of the power became in the hands of the executors a substitute for the real estate, and the devisees were actually entitled to such proceeds, subject, of course, to the power of a creditor to have such proceeds applied to the payment of the testator's debts under the provisions of the Code of Civil Procedure to which I have referred.

The complainant also alleges: That on January 27, 1897, the testator executed and delivered to the City Trust, Safe Deposit & Surety Company of Philadelphia a certain bond of indemnity, whereby he agreed to save the trust company harmless from any loss or damage it might suffer by reason of its having issued its bond on behalf of Patrick Costello to discharge a lien filed by the Glen Cove Granite Company; that thereafter the Glen Cove Granite Company brought an action against Costello and the trust company to foreclose the lien covered by the aforesaid bond, and on May 10, 1900, nearly three years after the death of the testator, judgment was entered in favor of the Glen Cove Granite Company against Costello; that on February 21, 1901, the Glen Cove Granite Company brought an action against the trust company; that on March 27, 1901, the trust company served notice on the defendant Skelly, as executrix of Patrick Larney, deceased, and called upon the estate of Patrick Larney to furnish any defense it might have to resist the pending suit; that on May 15, 1901, judgment was recovered in favor of the Glen Cove Granite Company against the trust company of which the executrix of Patrick Larney, deceased, received notice on May 18, 1901; that subsequently and on January 8, 1903, final judgment was entered against the trust company, which amount was paid by the trust company to the Glen Cove Granite Company on June 16, 1903; that on June 6, 1901, Skelly, as surviving executrix of the estate of Patrick Larney, transferred the real estate of which the testator died seised to one Catherine Devlin, but that such

sale was not an actual sale, but was a conveyance for a nominal consideration; that subsequently Catherine Devlin sold the property to one Anderson for $17,500 and turned over the proceeds of the sale to the defendant Skelly; that subsequently the proceeds of the sale were used by the said defendant Skelly in purchasing premises in the city of New York known as 216 East Forty-Ninth street, but the said Skelly, with intent to cheat and defraud the existing and subsequent creditors of the testator, took the record title in the name of the defendant Finnegan. And the judgment demanded is that the conveyance of the premises be declared, held, and adjudged to be taken for the benefit and use of the defendant Skelly as surviving executrix of the estate of Patrick Larney, deceased, that the same were taken and held by the defendant Finnegan in fraud of the right of the plaintiff as a creditor, and that the said premises be sold, and the plaintiff be paid the amount of its judgment thereon, with costs.

The plaintiff or his predecessor, the trust company, could, during the three years succeeding the issuance of letters testamentary to the executrix, have commenced an action against the estate to recover the amount of this indebtedness, and could have filed a lis pendens affecting this property which would have extended the time within which a creditor would have taken proceedings to have the real estate of the testator applied to the payment of his debts. It omitted, however, to take such a proceeding and omitted to apply within three years for the sale of the property.

In Russell v. Russell, 36 N. Y. 582, 93 Am. Dec. 540, the testator left certain real property, giving all his estate to his wife during her life, with remainder to his children, and appointed executors giving a power to sell the real and personal property. This will was admitted to probate, and subsequently the executors executed the power of sale for a consideration named in the deed of $3,000. The life tenant died in April, 1855, and in April, 1857, an action was commenced by the plaintiff, one of the heirs and devisees of the testator, to set aside this deed and the subsequent conveyances. The complaint was dismissed at Special Term, and the plaintiff appealed to the Court of Appeals. That court held: That the execution of this power of sale was for the interest of the residuary legatees; that the real estate was not liable for the debts of the testator, except upon the presentation of a petition to the surrogate alleging the insufficiency of the personal estate and asking the application of the real estate to that purpose; that the duty of the payment of debts belonged to the executor, and the real estate could not be applied to that purpose except upon certain proceedings being taken which were not taken in the present case.

In Slocum v. English, 62 N. Y. 494, it was held that a proceeding for the sale of a testator's real property, commenced more than three years after the granting of letters, was absolutely void, and that the statute commenced to run from the date of the original granting of letters of administration.

In Stilwell v. Swarthout, 81 N. Y. 109, it was held that an action could not be maintained to reach a fund in the hands of an administrator which has resulted from a sale of the decedent's real property. In

that case certain mortgages upon the property were foreclosed, the property was sold, and the fund remaining after the payment of mortgages was paid over to representatives named and constitutes the subject of controversy in the action. It was held that, in view of a failure to comply with the statute in relation to the sale of the decedent's real property to reach such proceeds, proceedings must be commenced before the surrogate, and that such funds, not being proper funds for distribution by the surrogate, could not be reached by an action in equity. The court there said:

"The plaintiffs' counsel insists that it (the fund) must be treated as surplus moneys arising upon a foreclosure sale, and regarded as equitable assets in the hands of the administratrix and administrator, and thus become a trust fund for the benefit of Swarthout's creditors. There are difficulties in enforcing this rule in the case at bar. The money represented real estate, and belonged to the heirs at law, subject to the widow's right of dower. The fund was not held by the administratrix and administrator in that capacity, but as trustees for the owners. It belonged to the latter, and the owners alone are answerable for its proper disposition and appropriation. Although the administrators are parties, the action is really against the heirs, to compel them to pay the plaintiff's debt from the surplus realized upon the foreclosure sale of the real estate. They can only be made liable in the manner prescribed by statute, and unless it be made to appear that the deceased left no personal assets within this state to be administered upon, out of which the debt can be collected, or that the personal assets have been disposed of and appropriated toward the payment of the demand. * * * The failure thus to seek redress according to the statute precludes the plaintiffs from enforcing their claim against the heirs at law in this action, and, as we have seen, the administratrix and administrator, as such, cannot be held liable, as the fund is not under their control as representatives of the estate."

In Selover v. Coe, 63 N. Y. 438, it was held that heirs at law or next of kin of a deceased person could only be made liable upon his contracts or for his debts in the cases and in the manner prescribed by statute. That was an action brought against the defendant, as one of the heirs at law and next of kin of a deceased debtor, to recover the shares of real and personal estate received by him to be applied upon an alleged claim of the plaintiff against the estate. It was held that the action could only be maintained in accordance with the statutory regulations which established a legal liability under the circumstances presented, and that there was no rule of common law which furnished a precedent for such a case.

In Matter of Gantert, 136 N. Y. 106, 32 N. E. 551, the testator, owing unsecured debts to the amount of $30,000 with personal property of $1,000, and real estate valued at upwards of $73,000, died leaving a will giving all his property, real and personal, to his executors upon certain specified trusts for the benefit of his wife and minor children, and giving his executors a power of sale. The petitioner, a general creditor, brought this proceeding for the sale of the testator's real estate. It was held that the proceeding could be maintained as the power of sale for payment of debts could not be implied, and a general power of sale was not sufficient to compel a sale for the purpose of paying debts; that to justify such a proceeding the debts must be made a charge upon the real estate. See, also, Clift v. Moses, 116 N. Y. 144, 22 N. E. 393.

I think therefore: That upon the death of the testator this land descended absolutely to his widow and children; that the power of sale was for the purpose of the division of his real estate; that the real estate left by the testator could only be made applicable to the payment of his debts by a proceeding under the provisions of the Code of Civil Procedure before cited; that, no such proceeding having been commenced within three years from the issuance of letters, the plaintiff lost his right to have the testator's real estate applied to the payment of his debts; that the exercise of the power of sale by the executrix vested in her the consideration that she received therefor as the property of the remaindermen, and amount on her hands as such was not applicable to the payment of the testator's debts; that the only remedy that the plaintiff has is an action at law against the devisees to recover the property of the testator which they had received, and that therefore this action cannot be maintained.

There are other questions in this case which would I think require an affirmance of the judgment, but, as I think the action cannot be maintained, it is not necessary to discuss them.

For this reason I think the judgment should be affirmed, with costs.