### WEINTRAUB v. SIEGEL et al.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

**1. CONVERSION (§ 16*)—REALTY INTO PERSONALTY.**

A will directing the executors to convert the entire estate into cash in such manner as they think proper, requiring them to set apart a trust fund for the benefit of a granddaughter, and to divide the balance and pay one-half to son H., and to hold the other half in trust, to pay the income to son M. for life, with the remainder to H. or lawful issue, provided he survived M., or predeceasing M., leaving issue, with gift over in the event of H.'s prior death without issue, operates to equitably convert the real estate into personalty, and the remaindermen take no title to or interest in the real estate, but only in the proceeds, and the contingent remainderman cannot elect to rescind a sale of real estate on the ground that title passed to one of the executors through a third person.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 38–43; Dec. Dig. § 16.*]

**2. EXECUTORS AND ADMINISTRATORS (§ 513*) — ACCOUNTING BY EXECUTORS —°DECREE—CONCLUSIVENESS.**

A decree of the Surrogate's Court settling the accounts of executors selling testator's real estate as provided by will directing them to sell the real estate, and set apart a trust fund, and divide the balance, etc., rendered on due notice to all the parties in interest, is conclusive on the parties on the question of the propriety of the sale and the sufficiency of the consideration realized thereon, though the accounts did not show that title to the real estate passed to one of the executors through a third person; for the question as to whether the executors accounted for the full market value of the land was necessarily involved.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2267–2291; Dec. Dig. § 513.*]

**3. EXECUTORS AND ADMINISTRATORS (§ 144*)—SALES—PURCHASE BY EXECUTOR —EFFECT.**

Testator directed his executors to sell his real estate in such manner as they deemed best, and to set apart a trust fund and divide the balance with gift over in a certain contingency.   The executors sold the real estate, and title to it passed to one of them through a third person. Those in whom the remainder vested subject to be divested in the event for which provision was made in the gift over released the right to question the title.   The accounts of the executors were approved by the Surrogate's Court on due notice to all parties in interest.   *Held*, that the sale to one of the executors was not voidable at the election of the contingent remainderman, whose only right was to compel the executors to account for the actual value of the real estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 604; Dec. Dig. § 144.*]

**4. EXECUTORS AND ADMINISTRATORS (§ 138*)—SALES OF REAL ESTATE—ACCOUNTING.**

Where executors have express authority under the will to sell real estate without the direction of the court or the consent of the parties in interest, the only restraint which the court or the parties in interest

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

can exercise is with respect to the accounting by the executors, and, where the amount reported by the executors as the selling price is inadequate, any party in interest may object, and the question must then be determined by the Surrogate's Court in proceedings to settle the account, and it may then either charge the executors with the land purchased by one of them, or with the fair value thereof, regardless of the price at which they sold it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560, 566, 568–575; Dec. Dig. § 138.*]

5. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE.

Testator directed his executors to sell his real estate and set apart a trust fund and divide the balance, and pay one half to son H., and hold the other half in trust to pay the income to son M. for life, with the remainder to H. or his lawful issue on his surviving M., or predeceasing M., leaving lawful issue, with gift over in the event of H.'s prior death without lawful issue.· The executors sold the real estate, and one of them became a purchaser through a third person. Those who acquired a vested estate subject to be divested in the event for which provision was made in the gift over released the right to question the title of the executor. The land passed through many innocent purchasers for value. Held, that the title was marketable as against the claim of the contingent remainderman residing in a foreign country, who could only take in the event that H. and his issue died during the life of M.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

6. VENDOR AND PURCHASER (§ 135*)—CONTRACTS OF SALE—OBJECTIONS TO TITLE.

Where a contract for the sale and purchase of real estate showed that the purchaser was buying the land and the buildings thereon as they stood, and provided that the dimensions were "more or less," an objection to the title on account of an encroachment of the wall of a building a few inches over the line of the premises of a height of 2½ feet without depreciating the premises, or rendering them less convenient for use or occupancy, was not tenable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 255–258; Dec. Dig. § 135.*]

7. SPECIFIC PERFORMANCE (§ 130*)—CONTRACTS—ENFORCEMENT.

Where a purchaser in a contract for·the sale and purchase of real estate based his refusal to take title on a specified ground which was not tenable, and stated that other objections based on an encroachment and a violation filed with the tenement house department could be adjusted by deducting a reasonable amount, the vendor was entitled to specific performance with deductions on account of such other objections.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig.·§ 424; Dec. Dig. § 130.*]

Clarke, J., dissenting.

Appeal from Special Term, New York County.

Action by Jacob Weintraub against Moses I. Siegel and another. From a judgment (57 Misc. Rep. 246, 109 N. Y. Supp. 215) in favor of plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Benjamin N. Cardozo (Samuel Brand, on the brief), for appellants. John Frankenheimer, for respondent.

LAUGHLIN, J.   This is an action by a vendee of real estate to enforce a lien for the amount paid on a contract for the purchase of the premises and for the expenses of examining the title after rejection of the title on the ground that it was unmarketable.   The contract which is the basis of the action was made between the parties to this action on the 27th day of August, 1906.   The premises are situate on the southerly side of 126th street, commencing 135 feet east of Third avenue, and are described as "all that certain lot, piece or parcel of land, with the building and improvements thereon erected" in the borough of Manhattan, in the city and county of New York, being 30 feet in width, front and rear, and extending in depth "ninety-nine feet, eleven inches to the center of the block."   And in the contract immediately following the description of the land is the following sentence:   "Be the said several distances and dimensions more or less." The defendants interposed a counterclaim, demanding judgment for a specific performance of the contract.

The objection to the title upon which the learned trial justice based his decision is that in the chain of title there is a voidable conveyance owing to the fact that in his opinion it was in effect from executors to one of themselves.   I am of opinion that this ground is not tenable. The premises in question were owned in fee simple absolute by one Henry Ungrich, who died on the 1st day of March, 1901, leaving a last will and testament which was duly admitted to probate by the Surrogate's Court of the county of New York on the 11th day of April, 1901.   The testator appointed his son, Henry Ungrich, Jr., and his nephew Martin Ungrich, his executors and trustees, who both qualified and entered upon the discharge of their duties as such.   There was an equitable conversion of the real estate into personalty, for the will by express provision directed the executors to convert "the entire estate into cash as soon after" the death of the testator as his executors or the survivor of them "deem best, in such manner and upon such terms, as my executors think proper," and, after setting apart out of the surplus proceeds a trust fund of $5,000 for the benefit of a granddaughter of the testator, the executors were directed to divide the balance into two equal parts, and to pay over one of such parts to the testator's son Henry, who was one of the executors, and to hold the remaining one-half part in trust to pay the income to another son of the testator, Martin Louis Ungrich, during his natural life.   The remainder of this one-half part which was subject to the life use of the testator's son, Martin Louis, was given to the son Henry or to his lawful issue, provided he survived his brother or predeceased his brother but left lawful issue who survived his brother, and, in the event of Henry's prior death without leaving lawful issue, then the testator gave to the wife of Henry the sum of $10,000 and $5,000 each to his nephews Martin and Henry, and the residue of this part of the trust fund he gave to his niece, Maria Rodenbach of Germany.   On the 22d day of May, 1902, the executors and trustees conveyed to one Harry K. Davenport all of the real estate owned by the testator at the time of his death.   The expressed consideration in the deed was $157,000, and on the same day the grantee conveyed the premises to Henry Ungrich, Jr., and the last

conveyance was recorded five minutes after the former. The expressed consideration in the last deed was $10. On the same day Henry's brother, Martin Louis Ungrich, and wife, released to him their interest in the premises, and the release was duly recorded. Both brothers are still living, and Henry has a daughter living, who also has two children living. The title of the defendants is derived through mesne conveyances from Davenport and Henry Ungrich, Jr. On the 13th day of March, 1903, the executors petitioned the Surrogate's Court for a judicial settlement of their accounts and a citation was duly issued and served upon all parties entitled to notice of the proceedings. The executors charged themselves with the sum of $166,730.96, and included in this amount was an item under date of May 31st, 1902, as follows: "Cash received, sale of real estate, $157,000." The executors credited themselves in their account with the sum of $84,844.33, and their account showed a balance of $80,013.30 in their hands. In the schedule containing the items with which the executors credited themselves under date of May 31, 1902, was an item as follows: "Cash paid to Henry Ungrich, Jr., half share of proceeds of real estate, $78,-500." And among the vouchers filed with the account was one signed by him acknowledging the receipt of this amount. It thus appears that the account expressly showed that the real estate had been sold, and that half of the proceeds of the sale had been paid over to the testator's son, Henry, and that the balance was held as a trust fund, as directed by the will. No objection was filed to the account, and on the 13th day of May, 1903, the surrogate made a decree judicially settling the account as filed.

I am of opinion that all parties in interest are concluded by the decree of the surrogate, and that, notwithstanding the fact that the question of the propriety of the sale of the land by the executors or the sufficiency of the consideration realized thereon were not in fact litigated before the surrogate, that their only remedy, if any, is an application to the surrogate to open the decree and for a rehearing with respect to the amount with which the executors are chargeable. It is true that the accounts did not show that title to the land passed to one of the executors through a third party; but I think that does not affect the binding force of the decree which indirectly confirms the sale. There is no evidence tending to give rise even to a suspicion that the amount for which the executors have accounted on account of the sale of the real estate was not the full, fair market value of the land. The question as to whether the executors accounted for the full market value of the land was necessarily involved in the accounting proceeding, and is necessarily concluded by the decree of the surrogate. See Pray v. Hegeman, 98 N. Y. 351; Matter of Denton v. Sanford, 103 N. Y. 607, 9 N. E. 490; Matter of Union Trust Co., 65 App. Div. 449, 72 N. Y. Supp. 977; Matter of Elting, 93 App. Div. 516, 87 N. Y. Supp. 833; Phalen v. U. S. Trust Co., 100 App. Div. 264, 91 N. Y. Supp. 537; Brown v. Wheeler, 53 App. Div. 6, 65 N. Y. Supp. 436; Blair v. Cargill, 111 App. Div. 853, 98 N. Y. Supp. 109. The rule that a trustee may not sell to himself, and that any assignment or conveyance of property to himself, although not void is voidable at the election of the cestui que trust, is inapplicable to the case at bar. Those

presumptively entitled to take and in whom the remainder of this estate vested, subject, of course, to be divested in the events for which provision is made in the will, are all of age and have released every right to question this title. Those who have merely an expectant estate in remainder, which is not vested, are given an interest in the fund to be held in trust by the trustees, and not in the real estate of the testator. Their only right in my opinion to question the sale made by the executors was on the accounting. The executors were given the legal title to the land, and it was their duty to sell it. There was an equitable conversion, and the remaindermen therefore took no title to or interest in the land, but only in the proceeds. See Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470; Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741; Nodine v. Greenfield, 7 Paige, 548, 34 Am. Dec. 363; 27 Cyc. 150; Wyeth v. Sorchan, 38 Misc. Rep. 173, 77 N. Y. Supp. 263. The right of the contingent remaindermen was to compel the executors or trustees to account for the actual value of the land. I can conceive of no theory on which it would be practicable to apply to the case at bar the doctrine to which reference has been made concerning the right of a cestui que trust to elect to avoid an assignment or conveyance. The remaindermen, who have merely an expectant estate, not vested, of course, would have no standing to make such an election until they come into possession of their estate. At present it is possible, but not at all probable, that they will ever come into the enjoyment of any estate under the will of the testator. When they do, however, if they ever do, it will not be in their province to undo all that has been done with reference to the management and settlement of this estate by the court in which the law vested exclusive authority to administer it in the meantime. They cannot elect to rescind the conveyance, for they cannot revoke or annul the decree of the surrogate in the proceedings had since based on this sale and the proceeds thereof, and they will not be in a position to restore the grantee to the condition in which he was at the time he received the conveyance. If they ever do come into possession of any estate under the will of the testator, it will be a share and interest in this trust fund and a right to require the trustees to account therefor. They will be entitled in the event that the contingencies upon which their estate depends happen to this trust fund, which is the proceeds of this sale of real estate which it is claimed they will then have the right to elect to rescind. The grantee against whom they would have such right to rescind would upon no principle of law of which I am aware have any right to prevent their coming into the enjoyment of the trust fund. It surely cannot be maintained that they will be entitled to the trust fund and to the land as well. The parties in interest and the court were informed by the accounts of the executors that they had sold the real estate of their testator. Having had express authority, without the direction of the court or the consent of the beneficiaries or the remaindermen to sell the real estate, the only restraint which the court or the parties in interest could exercise over their right to execute this authority was with respect to the accounting. It was their duty to sell the land for its fair market value and all that they could obtain for it in the exercise of reasonable diligence and skill. If the amount report-

ed by them as the selling price of the property was deemed inadequate, any party in interest was at liberty to file an objection, and the question would have been determined by the surrogate, and they could then either have been charged with the land as if still held by them, if it appeared that the sale had been made to one of them, or with the full fair value of the land, regardless of the price at which it was sold, and this would procure for the beneficiaries and remaindermen every substantial right. Assuming, but without deciding, that the sale could have been avoided before or on the accounting, or while title remained in the trustee, it will be altogether too late to take that step when, if ever, the niece of the testator who is the contingent remainderman becomes vested with an estate in possession, and on the facts here presented the vindication of the violated public policy must yield to the rights of subsequent innocent purchasers of the premises, and as impracticable owing to the counter public policy favoring the stability of title. The cases of Mutual Life Insurance Co. v. Schwaner, 36 Hun, 373, affirmed 101 N. Y. 681, and Rhodes v. Caswell, 41 App. Div. 229, 58 N. Y. Supp. 470, cited by the learned counsel for the appellants, I think fully sustain the contention that the decree of the surrogate is binding and conclusive upon all parties in interest with respect to the amount for which the executors are accountable on a sale of the land (see, also, Code Civ. Proc. § 2742), and, while it stands, I am of the opinion that it forecloses every such party from questioning the validity or propriety of the sale. It is undisputed, and the court has found, that every interested party, including the nonresident niece, had due notice of the accounting proceeding. It is perfectly clear, I think, that in no view and under none of the authorities cited would any party in interest have a right to rescind this sale. The most that has been done in any case bearing any analogy to this where there has been an accounting in the Surrogate's Court is to hold the executors accountable to the estate of which Matter of L. I. Loan & Trust Co., 92 App. Div. 1, 87 N. Y. Supp. 65, affirmed 179 N. Y. 520, 71 N. E. 1133, is an instance, or to impress a trust upon the land for the benefit of the cestui que trust to the extent of the difference between the actual value of the property and the amount realized on the sale by the executors in violation of their duty, of which Fulton v. Whitney et al., 66 N. Y. 548, is an example. In Farrelly v. Skelly, 130 App. Div. 803, 115 N. Y. Supp. 522, a trust was impressed on lands purchased with the proceeds of a sale of real estate by an executrix, title having been taken in the name of his cousin, but this was after executors had exhausted all legal remedies against the executrix. There is here, however, no evidence, and there is no presumption, that the sale was not for the full fair value of the property. Moreover, since there was an equitable conversion, I am of opinion, as already indicated, that no remainderman had or ever will have such an interest in the real estate as would warrant the court in impressing a trust thereon in his favor. It does not appear to be questioned but that the children of Henry Ungrich were represented by their father, and are bound by his acts. The contention is that the niece who resides in Germany, and who can only take in the event that Henry and his issue all die during the lifetime of his brother, may ultimately have a cause of action affecting

the premises in question owing to the conveyance to the trustee. The contingencies upon which a basis will be afforded any one to question this title on account of the conveyance to one of the executors is so remote and improbable and the possibility of a right of action accruing to them which may affect this title is so slight that I am of opinion that the title should not be held unmarketable on that account. Moreover, I think a purchaser is not chargeable with notice that Davenport was not the real purchaser, and it is, I think, by no means clear that he was not. The title has doubtless passed through many innocent purchasers for full value since the conveyance to the trustee, and I think it is no longer open to be questioned on this ground.

I am of opinion that the other objections to the title are not well founded. One relating to the projection of the building on the premises over the street line was expressly waived on the trial. Another is with respect to a violation filed with the building or tenement house department on account of the failure to erect proper fire escapes on the tenement house on the premises in question. It appears that it will cost only $150 to remedy this omission. Another objection originally taken was on account of an encroachment of the wall of a building a few inches over part of the rear line of the premises to a height of 2½ feet. The court expressly found that there was no evidence to show that this depreciated the value of the premises or rendered them less convenient for use or occupancy, and, in view of the fact that the contract shows that the plaintiff was purchasing the lot and buildings thereon as they stood, and contains an express provision to the effect that the dimensions are "more or less," I am of opinion that this ground of objection was not tenable. The final rejection of the title, however, was on account of the conveyance to the trustee, and the attorney for the plaintiff in the presence of his client at an interview between the parties concerning the removal of the objections to the title stated, in effect, that the objections with respect to the encroachments and with respect to the violation filed against the premises could be readily adjusted by deducting a reasonable amount on account thereof. The learned trial court, however, has found erroneously, I think, that these objections were not waived. I am of opinion that, when the intimation was thus expressly given that the title would be accepted were it not for the fact that in the opinion of the attorney for the plaintiff the conveyance to the trustee rendered the title unmarketable, the defendants, being advised that that fact did not render the title unmarketable, were at liberty to refuse the demand to refund the down payment and to pay the expense of examining the title, on the theory that plaintiff was willing to take title, if the title were not unmarketable on account of the conveyance to the trustee, and that the plaintiff was thereafter estopped from refusing to take title upon any other ground. Having based his refusal to take title on this ground when it is decided that the objection was not tenable, the defendants became entitled to a decree for a specific performance of the contract, with proper deductions on account of the items to which reference has been made. The trial court having found erroneously that the plaintiff did not waive the objections with respect to the filing of the violation of the building or tenement house laws

against the premises and with respect to the encroachments, it cannot, in view of the provisions of the contract, be held as matter of law that the defendants fully performed the contract on their part by tendering a marketable title free from all liens and incumbrances, and therefore a new trial must be granted.

The judgment should therefore be reversed and a new trial granted, with costs to appellants to abide the event.

.INGRAHAM, McLAUGHLIN, and HOUGHTON, JJ., concur. CLARKE, J., dissents.