JOHN H. BRINCKERHOFF AND MELBA BRINCKERHOFF, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN STEPHAN AND C. ELEANOR B. STEPHAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BEATRICE CLARY DAVIDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE B. CLARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8905, 8906, 8907, 8908. Promulgated May 14, 1947.

*Stanley H. Hemley, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge*: This proceeding was submitted on a stipulation, which the Court adopts as its findings of fact and which, in so far as material to the issue, discloses that:

Petitioners John H. Brinckerhoff and wife, Melba Brinckerhoff, are residents of Jamaica, New York; John Stephan and wife, C. Eleanor B. Stephan, are residents of Westbury, New York; Beatrice Clary Davids and George B. Clary reside at Cutchogue and Baldwin, New York, respectively. All filed their income tax returns for 1941 with the collector of internal revenue for the first district of New York.

Petitioners John H. Brinckerhoff, C. Eleanor B. Stephan, Beatrice Clary Davids, and George B. Clary were named as beneficiaries under article sixth of the will of their aunt, Laura E. Anderson, who died May 14, 1921, a resident of Jamaica, New York. At the time of her death Laura E. Anderson owned property known as 365 and 365A Fulton Street, Jamaica, which then had a fair market value of $66,207.24. The said article sixth provided:

> The property known as 365 and 365a Fulton Street, Jamaica, New York, is to be sold when in the judgment of my executors such sale shall be advisable. The proceeds of which will be divided as follows: To the Jamaica Hospital of Jamaica, New York, the sum of Five thousand dollars, the interest of said sum to be applied to the general use of said Jamaica Hospital of Jamaica, New York. To the Dutch Reform Church of America of Jamaica, New York the sum of Two thousand dollars. The balance of the proceeds of such sale is to be divided among the following heirs: CHARLOTTE ELEANOR BRINCKERHOFF and JOHN HENRY BRINCKERHOFF children of my brother STARR BRINCKERHOFF, GEORGE B. CLARY and BEATRICE EDWARDS CLARY children of my sister IRENE B. CLARY HAINES share and share alike. In the event of the death of either of the children of my brother, STARR, the survivor shall take the share of the one so dying. In the event of the death of either of the children of my sister IRENE, the survivor shall take the share of the one so dying.

The executors qualified under the will on June 8, 1921, and held the property until April 6, 1928, when they conveyed it to Brinclar Realty Corporation by deed recorded on April 24, 1930. This corporation on April 6, 1928, issued to each petitioner 250 shares of its capital stock. Each accepted the shares in lieu of his share of the proceeds of a sale of the property, and in consideration of the receipt each released the executors from liability to pay him a share of such proceeds, as provided in the will.

On April 6, 1928, the fair market value of the property was $135,-092.70, and the value of the 250 shares of the corporation was one-fourth of the property's value, or $33,773.17. The executors filed an income tax return for 1928, but made no reference in it to their con-

veyance to the corporation. The property was held by the corporation until the corporation was dissolved on June 30, 1941, and it was then conveyed as a liquidating distribution to the four petitioners, by deed recorded on August 14, 1941. "The total proceeds of the liquidation * * * amounted to" $135,092.70, of which each petitioner received, "by way of a one-fourth (¼) share in said real property," $33,773.17.

Petitioners reported no gain from the liquidating distribution. The Commissioner determined a long term capital gain of $71,864.78 by subtracting from the liquidation "proceeds" of $135,092.70 a figure of $63,227.92 representing the property's value at the testatrix' death, ($66,207.24) less depreciation. Taking 50 per cent of the gain, or $35,932.39, as taxable, he added one-fourth thereof, or $8,983.10, to the income of each petitioner, with the explanation:

Under Section 113 (a) (5) of the Internal Revenue Code the value of the stock in Brinclar Realty Corporation exchanged by you for its assets upon dissolution of the corporation is the value of the property itself on the date of the death of the testatrix.

In claiming bases for their shares equal to the fair market value of the Fulton Street property on April 6, 1928, petitioners argue that money, not the property, was bequeathed to them by their aunt's will; that title to the property passed to the executors, but never to them, and, while the estate may have been subject to a capital gain tax upon disposition of the property, they acquired the shares by purchase in 1928, giving up as consideration their right to proceeds from the property's sale, and this right had a value equal to the property's value. They cite in support *Anderson* v. *Wilson*, 289 U. S. 20, which seems conclusive that they never acquired an interest in the property. In that case Wilson's father by will directed his executors to sell the entire residuary estate whenever in their judgment a sale or sales could be advantageously made, and to divide the proceeds equally among his five children. The executors sold a building at a loss, and Wilson sought to deduct a fifth of it. In denying him the right, the Supreme Court said:

* * * Under the law of New York what passed to these executors was the title to the fee. By the will of this testator all his property, real and personal (with exceptions not now material), was to be converted into money. The five sons and daughters among whom the money was to be divided had no interest in the land, aside from a right in equity to compel the performance of the trust. Real Property Law of New York (Consol. Laws c. 50) § 100; *Schenck* v. *Barnes*, 156 N. Y. 316, 321, 50 N. E. 967, 41 L. R. A. 395; *Melenky* v. *Melen*, 233 N. Y. 19, 23, 134 N. E. 822. What was given to them was the money forthcoming from a sale, *Delafield* v. *Barlow*, [107 N. Y. 535, 14 N. E. 498]; *Salisbury* v. *Slade*, [160 N. Y. 278, 290, 54 N. E. 741]; *Weintraub* v. *Siegel, supra,* [133 App. Div. 677, 681, 118 N. Y. S. 261]. Their interest in the corpus was that and nothing more.

* * * What was bequeathed was an interest in a fund to be made up when the trustees were of opinion that it would be advisable to sell. This alone was given, and this has been received. There has been no loss by the taxpayer of anything that belonged to him before the hour of the sale, for nothing was ever his until the sale had been made and the fund thereby created. A shrinkage of values between the creation of the power of sale and its discretionary exercise is a loss to the trust, which may be allowable as a deduction upon a return by the trustees. * * *

So here, we are of opinion that title to the Fulton Street property was in the executors, and the increment in value prior to their disposition of it was a gain taxable to the estate.

Respondent cites *Brewster* v. *Gage*, 280 U. S. 327, for the general proposition that the basis of property acquired by bequest is its value at decedent's death, and, implicitly accepting the view that normally the gain here in question would be taxable to the executors, he contends that the executors' conveyance of the property to the corporation for all the latter's shares constituted a tax-free exchange under section 112 (b) (5), Internal Revenue Code,[1] so that petitioners, as nominees of the executors, acquired the executors' bases for the shares under section 113 (a) (6).[2] In support of this theory he reasons that:

* * * the effect of the transaction was the same as if the stock was issued in exchange directly to the executors and then distributed by them to the petitioners, or that the property was first distributed by the executors to the petitioners and they in turn transferred it to the corporation solely for the stock.

As the property was not first distributed to petitioners, we see no relevance in the second suggestion, but agree with the interpretation given in the first. By having the corporation issue its shares directly to petitioners, the executors exercised the same dominion over them and achieved the same result that would have followed if the corporation had issued its shares directly to them and they had then transferred the shares to petitioners. But this construction of the short cut does not support a holding that petitioners received the shares in the course of a tax-free exchange contemplated by section 112 (b) (5). Under that theory, the executors alone made such an exchange, were in control of the corporation immediately thereafter, and were liable for no tax on the consequent gain. But in directing distribution to petitioners, they made a disposition of the shares in

---

[1] Sec. 112 (b) (5). TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *

[2] Sec. 113 (a). BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that

* * * * * * *

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired after February 28, 1913, upon an exchange described in section 112 (b) * * *, the basis * * * shall be the same as in the case of the property exchanged.

consideration of petitioners' release of the estate from liability to pay the bequest. This second transaction was not a tax-free exchange, but was the satisfaction of a bequest payable in cash by the use of securities held by the estate. And it is now settled that the use by an executor or trustee of estate property to satisfy a beneficiary's right to a cash payment constitutes "a sale or other disposition" on which gain or loss by the estate is recognizable for tax purposes in the amount of the difference between the estate's basis and the cash liability satisfied. *Kenan* v. *Commissioner* (C. C. A., 2d Cir.), 114 Fed. (2d) 217; *Suisman* v. *Eaton*, 15 Fed. Supp. 113; affd., 83 Fed. (2d) 1019; certiorari denied, 299 U. S. 573. Conversely, the beneficiary's basis for property so acquired is "the value of the claim surrendered in exchange." *Kenan* v. *Commissioner*, *supra; Sherman Ewing*, 40 B. T. A. 912; *Hugh M. Matheson*, 31 B. T. A. 493; affd. (C. C. A., 5th Cir.), 82 Fed. (2d) 380.

The parties have stipulated that on April 6, 1928, the fair market value of the property was $135,092.70, and this amount may be accepted as a measure of the proceeds that would have been realized from a sale on that date and hence as an index to the aggregate value of the bequests satisfied by the shares. Neither party has adverted in brief to the further bequest of $5,000 to a hospital and $2,000 to a church, also payable from sale proceeds of the Fulton Street property, and the stipulation fails to indicate how those bequests were settled. Under the circumstances we must find, therefore, that "the value of the claim surrendered" by petitioners was $7,000 less than the fair market value of the property, and petitioners' aggregate bases are, therefore, $128,092.70.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

HARRON, *J.*, dissenting: The petitioners' theory that they had a money claim against the estate and that the claims were paid out of "other property" of the estate is extremely artificial. The will must receive construction. *Anderson* v. *Wilson*, involved a will of quite different terms, and construction of that will does not suffice for construction of the will here. There was no bequest of any specific amount of money which would give rise to a money claim against the estate. The problem of will construction raises the question whether there was equitable conversion. *Scholle* v. *Scholle*, 113 N. Y. 261; 21 N. E. 84; and *Chamberlain* v. *Taylor*, 105 N. Y. 185; 11 N. E. 625, 628, and cited cases show that it is necessary to determine whether the provision in the will created a discretionary or imperative power in the executors. Equitable conversion will not be decreed unless there is an imperative

direction for the sale of real estate under New York law according to the *Scholle* case. See Tiffany, Real Property, 3d Ed., pars. 296, 297, 682. The bequest to petitioners in the sixth clause of the will could be satisfied only from the Fulton Street property. For the legatees not to have any interest in the land, but to have only money legacies coming through the executors, there would have to be an equitable conversion of the real estate. *Anderson* v. *Wilson* does not serve to answer this question. It should be held that the real estate maintained its character until it was sold and that the legatees had interests in the real estate under the will until it was sold. The realty was never sold in any real sense.

There is also a question whether the executors and the legatees agreed not to follow the wish of the decedent expressed in the will that the property was to be sold. The property was held for 20 years. The executors made a transfer of title to a corporation formed to hold title 7 years after the date of death. Cash bequests of $7,000 were made to two institutions. The record does not show whether they have been paid. It is possible that the executors and legatees made some arrangement for the payment, perhaps out of rents.

The creation of the corporation and issuance of stock was merely form. The majority view exalts form above substance. The stock represented no more than what was behind it, which was the real property. Under the facts, the *Anderson* v. *Wilson, Kenan, Eaton,* and *Matheson* cases are not applicable to this case.

I believe respondent's view is sound. The wish of the decedent that the property would be sold was never carried out. In reality the property passed to the four legatees in 1928. The intervening holding by the corporation did not effect any change in the basis of the property because of section 112 (b) (5). The record fails to show any reason for use of a corporate titleholder, but there could be no step-up of the basis until the corporation liquidated in 1941. The majority view permits an unaccounted for gap taxwise from the time the real estate passed from the decedent and was valued for estate tax purposes. This error stems from an erroneous construction of the will and the holding that the bequest was a money bequest. The question is controlled by *Brewster* v. *Gage.* See *Griswold Co.*, 33 B. T. A. 537, 543. I believe the respondent correctly held that there was no change of basis resulting from any of the involvement of the corporation and that the basis for determining the gain in the taxable year was the value of the property at the date of the decedent's death.

I respectfully dissent.

TURNER and DISNEY, *JJ.*, agree with this dissent.