O. K. BRUNSVOLD, Appellee, v. K. C. MEDGORDEN, Appellant.

**EXCHANGE OF PROPERTY:** Payment in Second-Hand Property—Partial Default—Measure of Damages. He who buys property at an agreed price and agrees to pay for it in certain identified second-hand property, invoiced at wholesale cost, and *fails to reserve the right* to make up any deficiency in *other* similar second-hand property, must, under an agreement implied by law, in case said second-hand property fails to invoice to the agreed purchase price, make up the deficiency by paying a dollar in cash for each dollar of deficiency, and not an amount equal to the *actual money value* of the second-hand property of which there was a deficiency.

PRINCIPLE APPLIED: A contract provided: ''I agree to convey the following lands, . . . Consideration of land to

be $9,600, and agree to take in payment therefor the stock of merchandise . . . situated on (certain named lot) in Ellsworth, Minn., . . . at wholesale cost mark. Should said stock not amount to $9,600, I agree to take groceries in an amount to make up $9,600, situated (in a certain building) in Waseca, Minn., at wholesale cost. In no case shall I be obligated to receive more than $9,600 in stock.''

The combined wholesale-cost-mark invoice of both stocks, which was delivered, fell $1,054 short of $9,600. There was evidence that the wholesale cost of second-hand goods of the kind in question was 30 per cent. *above* the actual money value, but *held*, the 70 per cent. was not the proper measure of damages.

*Appeal from Winnebago District Court.*—HON. J. J. CLARK, Judge.

MONDAY, JUNE 21, 1915.

REHEARING DENIED SATURDAY, SEPTEMBER 25, 1915.

ACTION at law to recover the balance of the purchase price of a tract of land sold or exchanged by plaintiff to the defendant for certain stocks of merchandise. There was a trial to a jury, resulting in a verdict and judgment for the plaintiff, and defendant appeals.—*Affirmed.*

*Gordon & Osmundson,* for appellant.

*H. H. Dorland,* for appellee.

DEEMER, C. J.—The parties hereto, on July 12, 1912, entered into a written contract for an exchange of properties, from which we extract the following:

"This agreement entered into by and between O. K. Brunsvold of Kensett, Worth County, Iowa, party of the first part, and K. C. Medgorden of Lake Mills, Winnebago County, Iowa, party of the second part, to wit:

"The party of the first part agrees to convey by warranty deed clear of encumbrance the following described land: The south half (S. ½) and the northwest quarter (N. W. ¼) Sec-

tion eleven (11), Township one hundred and thirty-eight (138), range seventy-two (72), Kidder Co., N. Dak., containing 480 acres, more or less, according to U. S. Govt. Survey. Consideration of land to be nine thousand six hundred dollars ($9,600) and hereby agree to take in payment therefor the stock of merchandise consisting of Dry Goods, Shoes, Notions, Groceries, Clothing, Ladies' Furnishings, etc., together with fixtures and particular items of which are listed and herewith attached making a part of this agreement, said stock and fixtures located in the building situated on Lot 12, Block 7, village of Ellsworth, Minn., merchandise to be taken at wholesale cost mark as are. Should the said stock and fixtures not amount to the $9,600, the party of the first part hereby agrees to take groceries in amount to make up the $9,600; said groceries now located in the A. Grapp building, Waseca, Minn.; said groceries to be taken at wholesale cost at Waseca, Minn., total of stock not to exceed $9,600, and further agrees to furnish abstract of aforesaid land showing good marketable title.''

Pursuant to the contract, plaintiff conveyed his land to defendant, and defendant transferred the Ellsworth stock with fixtures to the plaintiff, the invoice price for the same being $8,174.09. The Waseca stock was also sent to plaintiff and it invoiced $369.98, leaving a balance still due plaintiff, either in stock or money, of $1,054.93. Plaintiff alleged that the Waseca stock which was shipped to him was old, unsalable, wormy, and unfit for food; that the goods were warranted and represented by defendant to be fresh, staple, and salable; and he (plaintiff) refused to receive the same and notified defendant thereof, and that the goods were at Ellsworth, Minnesota, subject to defendant's order; and he asked judgment for the difference between the contract price of his land, to wit, $9,600, and the invoice value of the Ellsworth stock, to wit, $8,179, or $1,420.91, and in addition thereto,

the amount of freight paid on the Waseca stock, to wit, $23.47.

Defendant denied that he warranted the Waseca stock, and alleged delivery thereof to the plaintiff as agreed. He also averred, ''That after the time he shipped said groceries from Waseca, Minnesota, to plaintiff at Ellsworth, Minnesota, upon finding the said groceries did not supply the deficiency between the price of the land and the invoice price of the stock at Ellsworth, Minnesota, it was afterwards, to wit, on or about the 4th of October, 1912, orally agreed between the parties, to wit, the plaintiff and the defendant, that the defendant should have further time to supply the deficiency from other stock which the defendant could furnish the same from some other stock of goods. That said agreement was in modification of the original contract of which Exhibit 'A' is a copy; that in said oral agreement no specific time was set in which defendant should furnish the balance of said stock, but defendant avers that he has in good faith and in compliance with said oral agreement been trying to procure the balance of the goods promised to the plaintiff, but had not had reasonable time before the commencement of this action in which to do so; that the plaintiff has made no demand upon the defendant to furnish the balance of said stock before any specific time and before the commencement of this action, and avers that this action is prematurely brought. Defendant further states that in making the contract of which Exhibit 'A' is a copy, the land in North Dakota was valued at $9,600 in consideration of that price for the full value of same; the stock to be in general of the same kind and quality as the stock at Ellsworth, Minnesota; that second-hand stocks of goods are not worth to exceed 70 per cent. of the cost price, and the money value of the amount of goods required under said contract to supply the deficiency between the goods already transferred and tendered to plaintiff, and said $9,600, would be less than $750. That if said sum of $23.47 or any other payment was made to said Chicago, Rock Island

& Pacific Ry. Co. it was made voluntarily by the plaintiff and not at the instance and request of the defendant."

EXCHANGE OF PROPERTY: payment in second-hand property: partial default: measure of damages.

The trial court submitted to the jury the issues made by the pleadings and also gave the following with reference to the damages to be awarded plaintiff in the event they found for him:

"You are instructed that unless you find the defendant has proved his affirmative defense aforesaid, and further find that defendant is not entitled to credit for the groceries shipped from Waseca to Ellsworth, invoiced at $365.98, you must find for the plaintiff for the full amount of the difference of $1,420.91 between the price of the land and the Ellsworth stock, as claimed, with six per cent. interest thereon from August 13, 1912; and if you find the defendant has not established his affirmative defense, but that he is entitled to the credit of said $365.98, you will deduct that sum from the $1,420.91 and find for the plaintiff for the balance with interest thereon from August 13, 1912. If you find the defendant entitled to said credit of $365.98, and that he has established by the evidence as hereinafter stated, his affirmative defense, your verdict must be for the defendant. If you find the plaintiff entitled to recover the entire amount of $1,420.91, you will also add to this sum the amount of freight paid by him, which was $23.47, and include the entire sum in the verdict, but if you find the defendant entitled to credit of $365.98 for the shipment of goods from Waseca, and that the plaintiff was not justified in refusing the acceptance thereof, he cannot recover anything for the freight paid by him thereon.

"With regard to the shipment of groceries of $365.98 from Waseca to Ellsworth, in order to prevent a credit for the full amount thereof upon the plaintiff's claim, the burden of proof is upon him and he must prove by the preponderance or greater weight of evidence before you, that the amount

of goods or substantial portion thereof, were either unmerchantable, worthless, or not equal in condition and quality to like goods in the stock at Ellsworth taken by the plaintiff from the stock there in the first place, from the defendant's store at that place. If the plaintiff has so proved substantially as he alleges, he was justified in refusing to accept the same, and you will not allow credit therefor. If he has failed to so prove, he was not so justified and you will allow defendant credit for the full amount of $365.98. Plaintiff was not required to open and examine all the boxes of said goods, if those opened disclosed such a condition as to show that the shipment as a whole did not substantially correspond with the warranty, if you find there was one.''

Under these instructions, the jury returned a verdict for the plaintiff in the sum of $1,054.93, thus allowing defendant credit for all the goods shipped to plaintiff at the invoice prices and awarding plaintiff the difference between the aggregate of these invoices and the agreed price of the land. The finding of the jury negatived the claim made by defendant that there was a modification of the original agreement regarding the purchase and delivery of a like quality of stock as that kept at Waseca. The net result of the finding was that the Ellsworth stock and the Waseca stock which plaintiff was to get in exchange for his land did not amount to more than $8,544.07, and that plaintiff was entitled to a money judgment for the difference, to wit, $1,054.93.

The only question raised by this appeal is the correctness of the instructions on the measure of damages. Defendant contends that the Waseca stock, invoiced at wholesale cost at Waseca, was not worth more than 70 or 75 cents on the dollar, and he introduced some testimony to that effect. Plaintiff testified that the Ellsworth stock was worth 100 cents on the dollar and that the Waseca stock which he expected to get was also worth the wholesale cost, freight added, although he said that what was shipped to him was worthless.

The question of the measure of damages for breach of a contract for an exchange of goods and property is always full of difficulty and the courts are not fully agreed upon the rules to be applied. If no money consideration is to be paid, and in the exchange, fictitious values are placed upon the properties for the purposes of the exchange, the measure of damages is not, as a general rule, the value fixed upon the property for exchange purposes, but the real value of the property which was not delivered according to the contract. *Fagan v. Hook*, 134 Iowa 381. This rule obtains only where there has been an exchange of properties. While, as a rule, an exchange is the equivalent of a sale, yet this is not always true, especially where the measure of damages is involved.

According to the books, if one piece of property be exchanged for another, without any price being set upon either, it is a clear case of exchange; but where the price of each property is definitely fixed and the difference in values is to be paid in money, it is a sale. "The criterion in these cases is whether there is a fixed price as a determination of the value at which the things are to be exchanged. If there is a fixed price, the transaction is a sale; but if there is not, the transaction is an exchange." Tiedeman on Sales, p. 12, Sec. 12. And this is especially true where the difference, if any, is to be paid in cash. In the latter event, if the difference is not paid, it may, of course, be recovered without diminution. *Harrington v. Wells*, 12 Vt. 505.

The reasonable and only fair interpretation of the contract now before us is that plaintiff sold his land to defendant for the agreed price of $9,600, to be paid for (1) by a stock of goods and fixtures at Ellsworth, Minnesota, taken at wholesale cost mark; and (2) if said stock and fixtures did not amount to $9,600, then plaintiff was to take groceries located in a building at Waseca, Minnesota, at wholesale cost at Waseca, the total of said stocks not to exceed $9,600. If the goods did not invoice to an amount sufficient to make up the difference between the price fixed on the land and the Ells-

worth stock, it is manifest that defendant could not substitute any other stock or any other goods in place of the Waseca stock, and plaintiff could not go upon the open market and purchase any such goods, even were he disposed to do so. In these circumstances, it is clear to us that defendant must make up the difference in cash, just as if he had expressly promised to pay the difference in cash. If he had expressly agreed to the latter, there would be no doubt as to the rule of damages. It is true that part at least of the purchase price was to be paid in goods and the parties may have thought that the goods would invoice to the full amount of the purchase price of the land; but, as already said, if they did not so invoice, there was an implied promise to pay the balance in cash, for there were no other goods of like character which defendant could substitute, and the measure of damages is not the value of goods of like character which plaintiff did not agree to take, but the difference between the invoiced price of the goods and the value fixed upon the land.

It must be admitted that there is a decided conflict in the cases on this main proposition, and it is doubtless true that if defendant had delivered no part of the stock called for by the contract, plaintiff's recovery would have been limited to the value of the stocks and fixtures which defendant promised to give in exchange for the land. In the absence of any evidence, it would be presumed, of course, that the stocks were worth the estimated price, subject, however, to proof that they were of much less value, the agreed value being treated as prima-facie evidence of true value. See *Fagan v. Hook, supra; Norton v. Hinecker,* 137 Iowa 750. See same case fully annotated in 15 Am. Ann. Cases, p. 474, also *Pierson v. Spaulding,* 27 N. W. (Mich.) 865.

Here the parties contemplated a payment for the land by the delivery of specified goods, and the goods, so specified, according to the verdict of the jury, were delivered, leaving part of the purchase price unpaid. Defendant insists that he is liable only for a shortage in the goods, and that plain-

tiff's recovery should be limited to the actual value of the goods had there been no shortage, while plaintiff insists that he was not bound to take any goods save those specified, and that if these did not amount to the price fixed for his land, he is entitled to the difference in cash. We are constrained to agree with plaintiff in his contention. True, he agreed to accept certain stocks of goods in payment for the land conveyed, the land having a fixed value and the goods and merchandise having, for trading purposes, a determinative value, but he did not agree to take any balance that might remain in goods of like quality or value; and the necessary inference is that, if there was any balance, it should be paid in cash. In order to safeguard himself, he promised that he was not to take more than $9,600 in value from the stocks of goods.

After all is said, the question narrows itself down to the proper construction of the contract. If the entire consideration was to be paid in property, and defendant could have fulfilled his promise by the delivery of specific property, doubtless the measure of plaintiff's recovery would be the value of that property, rather than the estimate put upon it for the purpose of exchange. But as defendant could not comply with the terms of his agreement without delivering specific property to the full amount of the exchange price, and could not substitute other property, he must be held liable for the difference in the exchange prices; and this was the measure of damages fixed by the trial court. We have been cited to no case precisely in point, and have not found any which seem to exactly fit the case. The proposition is largely one of first impression, and we are satisfied that; for the reasons indicated, the trial court announced the correct rule. The judgment must, therefore, be and it is—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.