## GRUVER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5213.

Circuit Court of Appeals, Fourth Circuit.

April 11, 1944.

James Craig Peacock, of Washington, D. C. (Paul F. Myers, of Washington, D. C., on the brief), for petitioner.

Melva M. Graney, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and HUTCHESON, District Judge.

SOPER, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies in income taxes of a real estate dealer amounting to $2,389.66 for 1939 and $3,581.73 for 1940 and the question is whether certain profits of the taxpayer's business were taxable as ordinary income or as capital gains. More specifically the question is whether or not the taxpayer's property was held by him primarily for sale to customers in the ordinary course of business and on that account excluded from the definition of the

term "capital assets" contained in the statute.

Since 1908, the taxpayer, a resident of Washington, D. C., has been continuously engaged in the real estate business on his own account and has traded, exchanged, bought and sold property. His trades and exchanges, as well as his sales, have been a substantial part of his business. In 1931 or 1932 he acquired 92 acres of land in Maryland near Washington by trade, and divided 25 or 30 acres into lots in order to dispose of the tract more readily. He derived a profit of $20,941.72 in 1939 and $18,915.42 in 1940 from the sale of these lots, and subsequently has sold more lots and traded some for improved property. During these years he also sold unimproved lots in Washington at a profit of $3,547.79 in 1939 and $3,021.16 in 1940.

Although the taxpayer's gains in 1939 and 1940 were derived from sales, it was stipulated that his real estate during the period was held just as much for trade and exchange or other disposition as for sale. He used standard forms of contract in his business and the one used for trade or exchange contained a paragraph providing for the payment of a cash sum by one party or the other to the contract. He held his property for an increase in value intending to dispose of it by trading or selling it to the same class of persons from whom he acquired it and in most cases he accomplished his purpose.

The case turns on the construction of § 117(a) (1) of the Internal Revenue Code 26 U.S.C.A. Int.Rev.Code, § 117(a) (1) which is as follows:

"Sec. 117. Capital gains and losses

"(a) Definitions. As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l)."

The Tax Court held upon the facts set out that the taxpayer's property was held primarily for sale to customers in the ordinary course of his business and therefore came within the terms of the statutory exception from capital assets. The taxpayer contends, in the first place, that this conclusion is not supported by but is in direct conflict with the court's express finding of fact that the property was held just as much for trade or exchange or other disposition as for sale and therefore cannot be said to have been held "primarily for sale." It is argued that this phrase is used in § 117(a) (1) of the statute in contradistinction to the phrase "sale or exchange" or "sale or other disposition" which is repeatedly employed in later subdivisions of the section when it is desired to define the character or incidents of capital gains, thereby indicating that the term "sale" does not include the term "exchange" but is to be distinguished therefrom.

■ This argument has the merit of verbal consistency but we do not think it should be sustained in view of the purpose which Congress obviously desired to achieve. The intention is clear to exclude property held for disposition in the ordinary course of business from the benefit of the lower rates applicable to capital gains. Section 117(a) (1) excludes from capital assets stock in trade, property of the kind proper to be included in an inventory and property used in trade or business of a kind subject to depreciation allowance. Like reason led to the additional exclusion of property held primarily for sale to customers in the ordinary course of business. Gains on property in all these categories were to remain subject to the tax at the regular rates because as in ordinary business transactions they were consumed or disposed of in the course of trade. The legislative purpose is served if the term "sale" is not given a strict interpretation but is held to include kindred transactions of exchange, for in one case as in the other the gains are earned in the ordinary course of business. No reason has been offered and we think that none can be suggested to explain why the profit from a sale strictly so called should be taxed at one rate and the gain from an exchange at another rate, when both transactions are incidents of the same business.

■ It is no distortion of language to employ the term "sale" so as to cover or

include an exchange of property. The courts in certain decisions have made an effort to define each term with precision and it has been held that the criterion in determining whether a transaction is a sale or an exchange is whether there is a determination of the value of the things exchanged. If no price is set for either property, it is said to be an exchange; but if each is valued and the difference is paid in money, it is a sale. Brunsvold v. Medgorden, 171 Iowa 413, 153 N.W. 163; Gill v. Eagleton, 108 Neb. 179, 187 N.W. 871; Forsyth v. Alabama City, G. & R. Co., 207 Ala. 488, 93 So. 401; 33 C.J.S., Exchange of Property, § 1. In line with these authorities is Rogers v. Commissioner, 9 Cir., 103 F.2d 790, certiorari denied 308 U.S. 635, 60 S.Ct. 135, 84 L.Ed. 528, where a transfer of property in extinguishment of a mortgage debt thereon was held to be a sale and it was said that a sale in the ordinary sense of the word is a transfer of property for a fixed price in money or its equivalent. In the pending case the taxpayer's objective necessarily led him to determine the money value of the properties involved in every business transaction in which he engaged, whatever form it happened to take.

■ The need to construe terms of variable meaning in a statute in harmony with the legislative purpose is shown in Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481, where it was held that a foreclosure sale of the taxpayer's interest in real estate was a sale of a capital asset within the meaning of the Revenue Act of 1934 and that therefore the loss sustained by the taxpayer was deductible only to a limited extent. Overruling the contention that the statute contemplated sales made by the taxpayer voluntarily, and did not include a forced sale, the court said: (311 U.S. at pages 507, 510, 511, 61 S.Ct. at page 369, 85 L.Ed. 303, 131 A.L.R. 1481):

"The term sale may have many meanings, depending on the context, see Webster's New International Dictionary. The meaning here depends on the purpose with which it is used in the statute and the legislative history of that use.

\* \* \* \* \*

"We can find no basis in the language of the Act, its purpose or its legislative history, for saying that losses from sales of capital assets under the 1934 Act, more than its predecessors, were to be treated any differently whether they resulted from forced sales or voluntary sales. True, courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, United States v. Katz, 271 U.S. 354, 362, 46 S.Ct. 513, 70 L.Ed. 986, or would thwart the obvious purpose of the statute, Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L. Ed. 340. But courts are not free to reject that meaning where no such consequences follow and where, as here, it appears to be consonant with the purposes of the Act as declared by Congress and plainly disclosed by its structure."

. In Helvering v. Syndicate Varieties, Ltd., App.D.C., 140 F.2d 344, 346, the court had under consideration the interpretation of the phrase "gains from the sale of stock" contained in § 351 (b) (1) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev. Acts p. 936, and it was urged that the phrase did not include an exchange of stock. In overruling this contention and in giving the phrase a broader interpretation Judge Dobie of this court, sitting there by special assignment, used the following language which we think is applicable to the case at bar:

"It is true that section 351(b) (1) (A) speaks only of 'gains from the sale of stock.' Yet it is obvious that Congress was here concerned primarily with the essential nature of the gain rather than the particular outward form of any given transaction. Thus, if a taxpayer designated as 'compensation' income which in fact was a 'dividend', no one would hesitate to include it as income of a personal holding company. Similarly, in the instant case, while the taxpayer received what was termed a liquidating dividend, it was tantamount, for tax purposes, to a sale of the stock in question, since Congress clearly meant to include within the ambit of the statute not only an ordinary sale but also any other distribution of stock which would result in a tangible gain. We are here interested in legal realities and not concerned with the subtle nuances of academic semantics. The word 'sale' was not used by Congress in a narrow restricted sense, it was rather used to define, broadly, income other than operating income."

■ We conclude, in view of the clear purpose of the statute and of the nature of the taxpayer's business in the pending

case, that the properties held by him for trade or exchange were held primarily for sale within the meaning of the statute.

The taxpayer also contends that even if his properties were held by him primarily for sale, they were not held for sale "to customers in the ordinary course of his trade or business." He points out that this express reference to the term "customers" was first inserted in the description of property excluded by definition from capital assets in § 117 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 707. The corresponding phrase in § 101 (c) (8) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 505, was "property held by the taxpayer primarily for sale in the course of his trade or business." With this in mind he insists that he should be considered an investor in real estate rather than a dealer who holds his property for sale to customers. To support this position he relies on certain findings of the Tax Court which may be summarized as follows: He has been in the real estate business on his own account since 1908. He has never had a real estate broker's license or agent's license and he does not belong to any organization of real estate men. He does not employ salesmen and rarely advertises. He does not purchase or sell as an agent of others and rarely negotiates directly with the other party to a transaction but prefers to deal with real estate brokers and pay them a commission. He disposes of his property in most instances by trading or selling it to real estate traders or persons from whom he has acquired it by trading or purchasing. In some instances he initiates a trade or sale by calling in an agent or firm whom he knows to be versed in that particular kind of property, while in other instances they initiate the transaction by coming to him. One of his objectives has always been to step up and increase the potential value of his real estate holdings.

■■ The Tax Court found as a fact that the taxpayer held his property for sale to customers and we think that substantial evidence supports the finding. It is conceded that he is in the real estate business and while this circumstance is not determinative of the question, since the activities of an investor may constitute a business* an intent on the part of the taxpayer to attract customers may properly be inferred. The purchase of unimproved land and the subdivision of it into lots to suit the needs of individual purchasers give evidence of this purpose. The operator of such a business is in the possession of properties which by reason of their size or location make a peculiar appeal to certain buyers who are thereby brought into direct contact with the land and must deal with the owner either personally or through his agents.

The courts in a number of cases have so held. Thus in Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, the taxpayers inherited an extensive tract of land from their father and sold it to an operator who subdivided it into lots for sale and then defaulted on his purchase. Thereupon the taxpayers engaged a sales agent who sold a large number of lots for them in the course of several years in order to liquidate their inheritance. It was held that the profits on the transactions were taxable as ordinary and not as capital gains. The court said: (120 F.2d at page 610):

"Taxpayers suggest in their briefs that they should not be held to have been in the trade or business of real estate subdivision because of the fact that they were forced into the position by reason of the condition of the property when it was reacquired by them from Ransom. They refer to the property as having been acquired by them in a 'damaged' state. We fail to see that the reasons behind a person's entering into a business—whether it is to make money or whether it is to liquidate—should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is—were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted—that is, that it constituted 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.'

\*        \*        \*        \*        \*

"The taxpayers call attention to the fact that the statute involved was amended in 1934 by adding the words 'to customers' and 'ordinary'. It is urged that the addition of these words indicate an intention by

---

\* See **Fuld v. Commissioner**, 2 Cir., 139 F.2d 465.

Congress to exclude from taxation as ordinary gains sales such as the ones with which we are here concerned. We do not agree. If, as we have held the fact to be here, the taxpayers were in the 'trade or business' of real estate subdivision, then certainly the sales of lots were to 'customers' in the 'ordinary' course of that business."

See also, Richards v. Commissioner, 9 Cir., 81 F.2d 369; Snell v. Commissioner, 5 Cir., 97 F.2d 891; Welch v. Solomon, 9 Cir., 99 F.2d 41. These decisions, relating to the profits from the sale of lands under the statute in its earlier form, reached the conclusion that the taxpayers held their property for sale in the course of their business because they subdivided it into suitable lots for sale to buyers or customers.

The taxpayer seeks to avoid this conclusion by calling attention to the line of cases in which the tax problems of persons who buy and sell securities have been considered. A distinction has been drawn between investors and speculators who trade in securities on their own account and dealers who keep a supply of securities on hand for resale to customers. But in these cases even under the earlier form of the statute, the significance of a resale to customers was recognized when the courts came to inquire whether a particular taxpayer was an investor or speculator on the one hand or a dealer on the other. Thus in Shafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101, the court distinguished the facts in the case before it (reported below in 65 App.D.C. 292, 83 F.2d 317) from the facts in Commissioner v. Stevens, 2 Cir., 78 F.2d 713; and it was shown that Stevens' firm was a dealer in securities because at all times it had on hand large blocks of certain stocks, in which it specialized, for sale to customers, whereas Schafer's firm could not be so classified because of the facts found by the Tax Court and quoted by the court with approval as follows (299 U.S. at page 174, 57 S.Ct. at page 150, 81 L.Ed. 101):

"The stocks in dispute were purchased for the firm's own account solely in expectation of a rise in the market, for sale to anyone at a profit, 'as distinguished from a purchase to create a stock of securities to take care of future buying orders in excess of selling orders.'

" 'They were purchased solely in expectation of a rise in the market, for the partnership's own account for resale, to any buyer, at a profit. The meaning of "dealer in securities," as defined in the controlling regulation, has been considered many times by the courts, and this Board. It is limited to one who, as a merchant, buys and sells securities to customers for the profit thereon.' "

The reference to customers in the Revenue Act of 1934 was inserted to prevent tax avoidance by making it abundantly clear that a stock speculator buying and selling securities for his own account and not for resale to customers was subject to the limitation on the deductibility of capital losses provided in § 117 of the Act. The Tax Court and the Courts of Appeals have given this construction to the Act. Burnett v. Commissioner, 40 B.T.A. 605, affirmed Commissioner v. Burnett, 5 Cir., 118 F.2d 659; Farr v. Commissioner, 44 B.T.A. 683; United States v. Chinook Investment Co., 9 Cir., 136 F.2d 984. See also, Trading Associates Corp. v. Magruder, 4 Cir., 112 F.2d 779; Fuld v. Commissioner, 2 Cir., 139 F.2d 465.

The activities of the taxpayer in the pending case were those of a dealer in land, who held his property for resale to customers. We reached a similar conclusion in Oliver v. Commissioner, 4 Cir., 138 F.2d 910, with respect to a taxpayer engaged on his own account in selling lots from a tract of land which he had subdivided for the purpose.

Affirmed.