## PAUL A. JOHNSON AND DOROTHY L. JOHNSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90251. Filed November 30, 1962.

*Richard S. Bull, Esq.*, for the petitioner.
*James H. Martin, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the taxable years 1955 and 1957 in the amounts of $31,478.78 and $2,926.31, respectively.

The issue for decision is whether the amounts of $41,600 in 1955 and $4,144.25 in 1957 which represented the difference between the fair market value at the date of transfer of common stock received by petitioner Dorothy L. Johnson in discharge of advances made to an estate of which she was executrix and the amount of such advances, constituted ordinary income. Respondent, in the alternative, contends that if these amounts did not constitute ordinary income to petitioners in 1955 and 1957, they did constitute capital gains in those respective years.

---

474

All of the facts were either stipulated or contained in documentary evidence received at the trial and are found accordingly.

Petitioners, husband and wife residing in 1955 and 1957 in Honolulu, Hawaii, filed joint Federal income tax returns for each of the years 1955 and 1957 with the district director of internal revenue at Honolulu, Hawaii.

Dorothy L. Johnson (hereinafter referred to as Dorothy) was married to Woodson K. Woods, Jr., who died on February 3, 1954, while a resident of St. Louis County, Missouri. After the death of Woodson K. Woods, Jr., Dorothy married Paul A. Johnson (hereinafter referred to as Johnson). Dorothy was executrix and the St. Louis Union Trust Company was administrator c.t.a. of the estate of Woodson K. Woods, Jr. (hereinafter referred to as the estate). The decedent left a will which was filed for probate in the Probate Court of St. Louis County, Missouri. Dorothy advanced to the estate for the payment of administration expenses and taxes a total amount of $208,000 on the dates and in the amounts as follows:

| Date | Amount |
| --- | --- |
| Nov. 4, 1954 | $5,000 |
| Dec. 29, 1954 | 105,000 |
| Apr. 29, 1955 | 98,000 |
| Total | 208,000 |

The trust officer of the St. Louis Union Trust Company, M. L. Wismar (hereinafter referred to as Wismar), under date of April 15, 1955, wrote a letter to Johnson which stated as follows:

Our Tax Department has forwarded to Mrs. Johnson the Federal estate tax return for signature. The signed copies of the form should be returned to us on or before May 3, 1955, which is the last filing date for the return. A partial payment of $100,000.00 has previously been made so that the balance of the tax shown on the return is now due and payable. We suggest that the funds for the balance of the tax be advanced by Dorothy. At the same time, the estate should reimburse her for the total advancements. The reimbursement will be in the form of Ralston Purina stock at the current market price. The current market price is approximately 102½.

You will note from the Federal Estate Tax Return that the dollar value of the marital deduction trust is approximately $853,000.00. The executors should consider making a distribution to this trust. It would consist primarily of Ralston Purina Company common stock at the present market value thereof, which is now about 102½. As I pointed out to you, the Federal Estate tax return will be audited in about one year. We hardly expect the return to be accepted as filed. Any changes that may be made would necessarily change the value of the gross estate, which would determine the amount of the marital deduction. In the valuation of the Ralston Purina stock we decreased the date of death value by 11½ points, which gives consideration to the blockage value for the number of shares involved. In connection with the satisfaction of the advancements and

of the marital deduction trust by the allocation of Ralston Purina Company shares at the current market price of 102½, we would also reduce the value by the number of points allowed in the valuation of the shares on the tax return. Applying the 11½ points to the current market price of the stock would reduce the value of the shares to 91. The estate, however, in assigning any shares, should allow some leeway since the exact value of the shares will not be determined until a Federal estate tax audit has been completed. For that reason, we are suggesting that 1980 shares should be assigned to Dorothy as a payment on account of her advancements and that 8500 shares should be assigned to the marital deduction trust. The satisfaction on account of both the advancement and the marital deduction would be on the basis of an adjusted value being used, based on the number of points allowed on the valuation of the stock for death tax purposes.

On April 20, 1955, Johnson replied to Wismar's letter with a letter which stated in part as follows:

Now, regarding the reimbursements for the advancement to the estate from Dorothy's personal account, you mentioned that you have in mind settling this by allocating Purina stock to the advancement based on a rate of $91 a share taking into consideration the current market price reduced by a figure of 11½ points for blockage. This seems all right, but I am wondering whether it would not be better to pay off completely the advancement to the estate based on the figure of 91 and then make an adjustment later on in cash by either a payment by the estate or to the estate, whichever the case may be, based on the final allowance for the Federal Tax return. Offhand, it would seem a little more simple to do it this way, and it would clarify the status of any dividends from the shares transferred to cover the advancement. You might comment on this.

On May 3, 1955, Wismar mailed to Johnson for Dorothy's signature as executrix of the estate a petition for order to repay advances. The petition was accompanied by a letter which stated in part as follows:

We have tried to incorporate in both petitions that the exact amount is to be adjusted at a later date when the additional information becomes available. We are considering that the transfers of the stock are being made as of the date of our previous correspondence, wherein we quoted the market of Ralston Purina stock at 102½. If there should be a delay in following through on the two petitions, it will be necessary for us to adjust the value of the shares at the market value at the time the allocation is to be made. I undersand that Ralston Purina firmed up recently and that it is now quoted at 108 to 110.

The petition was executed by Dorothy as executrix on May 10, 1955, and by the St. Louis Union Trust Company as administrator c.t.a. on June 2, 1955. This petition stated as follows:

Your petitioners report that Dorothy L. Johnson has advanced a total of $208,000.00 to the estate of which $5,000.00 was advanced on November 4, 1954, $105,000.00 was advanced on December 22nd, 1954, and $98,000.00 was advanced on April 29, 1955. The foregoing amounts should now be repaid;

Your petitioners desire to repay the advancements in the form of Ralston Purina Company common stock of $25.00 par value. The current market price for the stock is $102.50 per share, which should be reduced by the number of points to be allowed for blockage in the adjustment of the federal estate tax.

Petitioners are claiming 11½ points for blockage in the valuation of the Ralston Purina shares owned by the estate in the computation of the federal estate tax. Due to the number of shares involved, petitioners believe that in the allocation of the 2,080 shares in this petition, the current market price should also be reduced by the number of points to be allowed in the valuation of the Ralston Purina shares.

Whenever the net value of the shares has been determined upon the completion of the audit for the federal estate tax, petitioners will be required to allocate additional shares of Ralston Purina stock to Dorothy L. Johnson in final settlement of the advancements due her;

WHEREFORE, the premises considered, your petitioners pray for an order of this Honorable Court authorizing and directing them to assign, transfer and deliver to Dorothy L. Johnson, 2,080 shares Ralston Purina Company common stock of $25.00 par value, to partially reimburse her for advancements made by her to this estate of cash in the amount of $208,000.00; and for such other and further orders as the Court may deem proper.

On June 2, 1955, the Probate Court of St. Louis County entered an order which recited the allegations of the petition and concluded:

And the Court having heard and duly considered the said petition and the evidence adduced in support thereof, and being fully advised in the premises, doth therefore ORDER AND ADJUDGE that the Executrix and Administrator cum testamento annexo aforesaid be, and they are hereby authorized and directed to assign, transfer and deliver to Dorothy L. Johnson, 2,080 shares Ralston Purina Company common stock of $25.00 par value, belonging to said estate, at the value to be determined upon the completion of the audit for the federal estate tax, to apply as partial reimbursement to her for advancement made by her to this estate of cash in the sum of $208,000.00, all as prayed for in said petition.

On October 10, 1957, Dorothy, as executrix, and the St. Louis Union Trust Company, as administrator c.t.a., filed with the Probate Court of St. Louis County a petition for order to repay the balance of the advancements made by Dorothy which stated as follows:

2. By an order of this Court duly entered on the 2nd day of June, 1955, petitioners were authorized and directed to assign, transfer and deliver to Dorothy L. Johnson 2,080 shares of Ralston Purina Company common stock of the par value of $25 per share belonging to the estate at a value to be determined upon the completion of the audit of the Federal Estate Tax, to apply as partial reimbursement to her for advancements made by her to this estate of cash in the sum of $208,000. Such transfer was to be at a tentative valuation of $91 per share based upon a current market value of $102.50 per share, reduced by 11½ points per share for blockage, the amount of blockage which had then been claimed by petitioners in the valuation of Ralston Purina Company common stock owned by the estate in the computation of the Federal Estate Tax. Pursuant to said order, 2,080 shares of said stock were duly transferred and delivered by petitioners to Dorothy L. Johnson. As indicated by said order, when the net value of the shares of said stock should be determined on the completion of the audit of the Federal Estate Tax Return, an additional number of shares of Ralston Purina Company common stock, or cash, or both, would be required and be due Dorothy L. Johnson to complete the repayment of her advancements.

3. In the final determination of the Federal Estate Tax due by the estate, the number of points allowed for blockage in valuing the Ralston Purina common

stock owned by the estate was 8 points, and as a result of such determination the 2,080 shares transferred as aforesaid are properly to be assigned a valuation of $94.50 per share or a total of $196,560, leaving a balance of $11,440 to be paid to Dorothy L. Johnson to repay the total of $208,000 of advancements. This balance should now be paid by the assignment, transfer and delivery of additional shares of Ralston Purina common stock and cash as necessary.

4. Since the aforesaid transfer of 2,080 shares of said stock, shares of Ralston Purina Company common stock of $25 par value ("old stock") have been split or divided on the basis of five new shares of the par value of $5 per share ("new stock") for each one share outstanding, so that for the purpose of completing the repayment of the advancements the valuation to be placed upon each share of new stock would be one-fifth of $94.50 or $18.90 and the number of shares of new stock required therefor at such valuation would be 605 shares thereof at a total value of $11,434.50, leaving $5.50 as the amount of cash needed completely to repay said advancements.

5. Since the aforesaid order of this Court dated June 2, 1955, dividends declared and paid on the number of shares of Ralston Purina Company common stock required to complete the repayment as proposed herein, originally consisting of 121 shares of old stock and now consisting of 605 shares of new stock, have amounted to $1,210, for which petitioners should account to Dorothy L. Johnson. This amount, however, should be charged (and petitioners credited) with the amount of $220.25, representing the pro rata portion of income taxes paid by petitioners but properly chargeable to Dorothy L. Johnson, so that the net amount of dividends to be accounted for is the sum of $989.75, which petitioners should now pay to Dorothy L. Johnson.

WHEREFORE, the premises considered, your petitioners pray for an order of this Honorable Court authorizing and directing them to assign, transfer and deliver to Dorothy L. Johnson, to complete the repayment of the amount due her for advancements: (1) 605 shares of Ralston Purina Company common stock of the par value of $5 per share now held by petitioners and the sum of $5.50 in cash, and (2) the sum of $989.75 in cash representing the dividends received by petitioners to be accounted for as aforesaid after deducting therefrom the said sum of $220.25 for adjustment of tax, and that this Honorable Court enter such other and further orders as it may deem proper.

On October 25, 1957, the Probate Court entered its order that the executrix and administrator c.t.a. "be, and they hereby are authorized and directed to assign, transfer and deliver to Dorothy L. Johnson, to complete the repayment of the amount due her for advancements 605 Shares of Ralston Purina Company, common stock, and the sum of $5.50 in cash, and the sum of $989.75 in cash representing the dividends received by petitioners to be accounted for as set out in said petition less the sum of $220.25 for adjustment of tax."

Between June 2, 1955, and October 10, 1957, Ralston Purina Company common stock had been split five for one. Ralston Purina Company common stock had a fair market value per share, without consideration for blockage, on the dates indicated as follows:

| Date | Value per share |
| --- | --- |
| Apr. 15, 1955 | $102.50 |
| June 2, 1955 | 114.50 |
| Oct. 25, 1957 | 25.75 |

In its fiduciary income tax return for the year 1955 the estate reported long-term capital gain from the sale or exchange of 2,080 shares of Ralston Purina Company common stock in the amount of $68,640 resulting from a difference in a sales price of $189,280 and a cost of $120,640. In its fiduciary income tax return for 1957 the estate reported a gain from the sale or exchange of 605 shares of Ralston Purina Company common stock on October 25, 1957, in the amount of $3,993, which resulted from a sales price of $11,434.40 and a cost of $7,441.50.[1]

Respondent in his notice of deficiency increased petitioners' reported taxable income for the year 1955 by the amount of $41,600 with the following explanation:

On your federal income tax return for the taxable year 1955 you reported no income from your receipt of 2,080 shares of Ralston Purina Company stock from the Estate of Woodson K. Woods, Jr. in settlement of an indebtedness. It is held that you received taxable income in the amount of $41,600.00 by the acquisition of such stock. The income is computed as follows:

| | |
|---|---|
| Fair market value of stock (2,080 shares at $114.50) | $238,160.00 |
| Indebtedness settled | 196,560.00 |
| Taxable income | $41,600.00 |

Respondent increased petitioners' taxable income for the year 1957 by the amount of $4,144.25 with the following explanation:

On your federal income tax return for the taxable year 1957 you reported no income from your receipt of 605 shares of Ralston Purina Company stock from the Estate of Woodson K. Woods, Jr. in settlement of an indebtedness. It is held that you received taxable income in the amount of $4,144.25 by the acquisition of such stock. The income is computed as follows:

| | |
|---|---|
| Fair market value of stock (605 shares at $25.75) | $15,578.75 |
| Indebtedness settled | 11,434.50 |
| Taxable income | $4,144.25 |

Respondent filed an amendment to answer in which he prayed, in the alternative, that this Court determine that petitioners realized in the taxable year 1955 long-term capital gain in the amount of $1,058.20 and short-term capital gain in the amount of $40,541.80, and that petitioners realized in the year 1957 long-term capital gain in the amount of $4,144.25.

OPINION.

Petitioners take the position that the substance of the transaction here involved is a purchase by Dorothy of 2,080 shares of Ralston Purina Company common stock in 1955 at $94.50 per share and 605 shares of Ralston Purina Company common stock in 1957 at $18.90

---

[1] It is noted that the difference in these two figures is $3,992.90, so apparently the computation as shown on the return was in error by 10 cents.

per share. Petitioners contend that since this stock was acquired in repayment of money advanced by Dorothy to a solvent estate, which advances she could have required to be repaid in full in cash, her acquisition of the Ralston Purina Company common stock was in effect a purchase of that stock for cash. Petitioners argue that the price at which the stock was transferred was its fair market value at the date Dorothy agreed with the St. Louis Union Trust Company to accept the stock in repayment of her advances to the estate with a proper adjustment for blockage. They further argue that if the blockage adjustment is not considered proper, this only means that Dorothy has made a bargain purchase and not that she has realized any taxable income or gain.

Respondent takes the position that the transaction was not in substance a purchase by Dorothy of the Ralston Purina Company common stock but that Dorothy's claims against the estate were property which she disposed of in 1955 and 1957 when she was repaid by the estate with property of a fair market value at the dates it was transferred to her in excess of the advances she had made to the estate.

Respondent's primary position is that Dorothy's disposition of her claims against the estate on account of her advancements to it was not a sale or exchange and, therefore, the excess of the fair market value of the stock over the amount of the advancements constituted ordinary income, and his alternative position is that if the transaction is viewed as a sale or exchange by Dorothy of property (her claim against the estate) for property (the Ralston Purina Company common stock), then the excess of the fair market value of this stock over the amount of the advancements constitutes capital gain, a part of which is long-term, and the balance short-term capital gain.

The use by an executor of an estate of property to discharge a beneficiary's claim for a legacy payable in cash constitutes a sale or other disposition of property on which gain or loss by the estate is recognized. In *John H. Brinckerhoff*, 8 T.C. 1045, 1049 (1947), affd. 168 F. 2d 436 (C.A. 2, 1948), we stated:

And it is now settled that the use by an executor or trustee of estate property to satisfy a beneficiary's right to a cash payment constitutes "a sale or other disposition" on which gain or loss by the estate is recognizable for tax purposes in the amount of the difference between the estate's basis and the cash liability satisfied. *Kenan v. Commissioner* (C.C.A., 2d Cir.), 114 Fed. (2d) 217; *Suisman v. Eaton*, 15 Fed. Supp. 113; affd., 83 Fed. (2d) 1019; certiorari denied, 299 U.S. 573. Conversely, the beneficiary's basis for property so acquired is "the value of the claim surrendered in exchange." *Kenan v. Commissioner, supra; Sherman Ewing*, 40 B.T.A. 912; *Hugh M. Matheson*, 31 B.T.A. 493; affd. (C.C.A., 5th Cir.), 82 Fed. (2d) 380.

We see no distinction between a use of property to discharge a claim which is a charge against the estate because of a legacy payable in

cash and a claim which is a charge against the estate because of advances made thereto where the estate is solvent and able to repay the advances in cash if required to do so, which obviously was the circumstance of the estate here involved. In other situations also, the transfer of property in satisfaction of an indebtedness constitutes a sale or exchange of the property. *Burger-Phillips Co.* v. *Commissioner*, 126 F. 2d 934 (C.A. 5, 1942), affirming a Memorandum Opinion of this Court.

We agree with petitioners that in the instant case the effect of the letters between Wismar and Johnson in April 1955 was that Dorothy's advancements to the estate would be repaid in Ralston Purina Company common stock at its then fair market value of $102.50 per share less the amount allowed for blockage in the final estate tax settlement. It is true, as respondent points out, that petitioners have not shown that a block of shares of stock of the size transferred to Dorothy would have the same blockage adjustment as would the shares of stock in the estate which the evidence in this record shows were greatly in excess of the 2,080 shares transferred to Dorothy in 1955. However, it is clear that Johnson and Wismar agreed to such an adjustment in the fair market value of the stock and therefore the fact that the adjustment may have been greater than warranted by the number of shares transferred does not prevent the transaction from being a sale or exchange.

Respondent argues that the letters between Wismar and Johnson could not in legal effect amount to an agreement by the estate to sell and Dorothy to purchase the Ralston Purina Company common stock since under Missouri law such a sale would require the approval of the Probate Court. However, it is clear that the agreement between Wismar and Johnson on behalf of Dorothy was made subject to the approval of the Probate Court which was then obtained. As respondent points out, the transaction was not closed for tax purposes until the approval of the Probate Court was obtained and the transfer of the stock made. *Lucas* v. *North Texas Lumber Co.*, 281 U.S. 11 (1930). The conclusion which respondent draws does not, however, follow. The fact that the approval of the Probate Court was required to permit a sale of the stock to Dorothy does not prohibit a sale from occurring when that approval was obtained, which sale was pursuant to a prior agreement made subject to obtaining the approval of the Probate Court.

Respondent contends that Wismar's letter to Johnson of May 3, 1955, enclosing the petition for Dorothy's signature indicates that no agreement as to the prices at which the transfer of the stock was to be made had been reached. We do not so interpret this letter. The letter enclosed a petition which stated a price of $102.50 per share with adjustment for blockage. The letter stated, "We are considering that the transfers of the stock are being made as of the date of our previ-

ous correspondence." The necessity of adjusting the value of the shares was " if there should be a delay in following through" on the petition. No such delay occurred since the Probate Court order of June 2, 1955, permitted the transfer at a value of $102.50 per share with adjustments for blockage and this same basic value was used for the transfer in 1957. While the order of the Probate Court was obtained in proceedings which were not adversary in the sense of being contested, the approvel of the value of $102.50 per share for the stock was a recognition of this amount as being the fair market value of such stock as agreed to between the parties at the time the parties agreed to the repayment of Dorothy with stock since the petition showed that it was signed by Dorothy on May 10, 1955, and by Wismar on June 2, 1955. Certainly, the Probate Court was aware that the fair market value of stock might have changed between those dates.

Respondent, in support of his position that Dorothy disposed of her claim against the estate in a transaction which was not a sale or exchange and therefore the excess of the fair market value of the stock over the amount of the advances by Dorothy to the estate is ordinary income, relies on cases involving cash payments of indebtedness, including *Galvin Hudson*, 20 T.C. 734 (1953), affd. 216 F. 2d 748 (C.A. 6, 1954) ; *Herbert's Estate* v. *Commissioner*, 139 F. 2d 756 (C.A. 3, 1943), affirming a Memorandum Opinion of this Court, certiorari denied 322 U.S. 752 (1944) ; *Helvering* v. *Roth*, 115 F. 2d 239 (C.A. 2, 1940) ; and *Hale* v. *Helvering*, 85 F. 2d 819 (C.A.D.C., 1936), affirming 32 B.T.A. 356 (1935). The theory of these cases is that a cash payment of an indebtedness extinguishes the indebtedness and while such an extinguishment is a disposition of the indebtedness, it is not a sale or exchange thereof since there is no transfer of property to the debtor or acquisition of property by him. *Alexander E. Duncan*, 9 T.C. 468, 470 (1947). In the instant case Dorothy did acquire property, the Ralston Purina Company stock. Therefore, the theory of the cases relied upon by respondent is inapplicable in the instant case. We do not think there is any validity to respondent's suggestion that the excess of the fair market value of the stock at the date of its transfer over the amount of Dorothy's advances was in the nature of interest on such advances. The correspondence between Wismar and Johnson, the petition to the Probate Court and the order of that court contain no mention of interest, and the clear inference from all these documents is that no interest on Dorothy's advances was contemplated or allowed.

Respondent's alternative argument is that Dorothy's claim against the estate for her advances was property in her hands of a value of the amount thereof and that when she exchanged this property for the Ralston Purina Company stock which had a value in excess of her advances she realized capital gain. The evidence is clear that

the last advance of $98,000 made by Dorothy on April 29, 1955, was with the agreement that for the money advanced she would receive stock. This is clearly a transfer of money for property which in common parlance constitutes a purchase of property. The situation with respect to the $110,000 of prior advances is not equally as clear. However, the very extinguishment of a right to a money equivalent by the transfer of property is more in the nature of a sale of the property transferred than the barter concept present in an exchange of property for property. Cf. *Galvin Hudson, supra,* and *Knop* v. *United States,* 234 F. 2d 760 (C.A. 8, 1956). In discussing the distinction between a sale and an exchange in *Gruver* v. *Commissioner,* 142 F. 2d 363 (C.A. 4, 1944), affirming 1 T.C. 1204, the Circuit Court stated, at page 366:

it has been held that the criterion in determining whether a transaction is a sale or an exchange is whether there is a determination of the value of the things exchanged. If no price is set for either property, it is said to be an exchange; but if each is valued and the difference is paid in money, it is a sale. Brunsvold v. Medgorden, 171 Iowa 413, 153 N.W. 163; Gill v. Eagleton, 108 Neb. 179, 187 N.W. 871; Forsyth v. Alabama City, G. & R. Co., 207 Ala. 488, 93 So. 401; 33 C.J.S., Exchange of Property, sec. 1. In line with these authorities is Rogers v. Commissioner, 9 Cir., 103 F. 2d 790, certiorari denied 308 U.S. 635, 60 S. Ct. 135, 84 L. Ed. 528, where a transfer of property in extinguishment of a mortgage debt thereon was held to be a sale and it was said that a sale in the ordinary sense of the word is a transfer of property for a fixed price in money or its equivalent.

Judged by the criteria set forth in *Gruver* v. *Commissioner, supra,* the transaction here involved was a sale. We hold that the transaction whereby Dorothy acquired 2,080 shares of Ralston Purina Company common stock in 1955 and 605 shares of such stock in 1957 was a purchase by her of this stock for a price of $207,994.50, or $94.50 per share for the 2,080 shares and $18.90 per share for the 605 shares, and such purchase did not result in any taxable income or gain to petitioners in either 1955 or 1957.

Because of certain payments of tax made after the issuance of the notice of deficiency,

*Decision will be entered under Rule 50.*